Jimmy P. MEADS and Ethel K. Meads, Plaintiffs,

v.

CITICORP CREDIT SERVICES, INC., Defendant.

Civ. A. No. 287–182.

United States District Court, S.D. Georgia, Brunswick Division.

May 10, 1988.

Evelyn Johnson, Brunswick, Ga., for plaintiffs.

Albert Fendig, Jr., Brunswick, Ga., for defendant.

### ORDER

ALAIMO, Chief Judge.

Jimmy and Ethel Meads filed suit against Citicorp Credit Services, Inc. ("CCSI"), alleging violations of the Fair Debt Collection Practices Act ("the Act"), 15 U.S.C. §§ 1692 *et seq.*, and intentional infliction of emotional distress, arising out of efforts by CCSI to collect on Meads' overdue Visa credit card account. CCSI moves for summary judgment, contending that it is not a "debt collector" under the terms of the Act and that its actions cannot, as a matter of law, sustain a claim for intentional infliction of emotional distress. The motion will be granted in part and denied in part.

### FACTS

Citibank (South Dakota), N.A. ("Citibank"), issued a Visa credit card to Jim Meads. In January 1986, Meads fell behind on his payments. It is alleged that he ceased making payments altogether sometime in 1986 and that the balance due currently exceeds $5,000.

Attempts to collect on the account were performed by both Citibank and CCSI. These attempts included letters and a series of allegedly harassing telephone calls.

Meads does not appear to dispute that the account is owed and is seriously overdue. Rather, he contends that he was unable to make the required minimum payments on the account due to medical problems and related medical expenses incurred on behalf of himself, his wife and son. He argues that the *methods* utilized to collect the account were improper.

The record is not clear as to the extent and nature of the communications between CCSI and Meads during the first half of 1986. However, in the latter half of the year, there were numerous mail and telephone communications between Meads and CCSI. By letter dated July 15, 1986, Meads was informed that his Visa account was closed and "is being processed for referral by our CCS Collection Group for the total balance." The letter also stated: "If you call today, we will attempt to assist you." The letter is on Citibank Preferred Visa stationery with a caption, "Citicorp Credit Services, Inc. A Division of Citicorp." "Citibank" appears at the bottom of the stationery.

On July 15, 1986, an attorney, Randall Clark, wrote to Citibank a brief letter which states:

The amount of this account is disputed. Do not contact Mr. or Mrs. Meads again. Direct future inquiries through this office.

On July 16, 1986, Meads wrote to CCSI explaining his situation and assuring partial payments on the account, but acknowledging that he would be unable to meet the minimum payment requirements. Meads stated in the letter that CCSI collectors would not listen to his explanation and that their repeated phone calls and harassing nature caused both physical and emotional damages to his wife and himself. Specifically, Meads stated: "I do not appreciate being talked to in this manner or having my wife reduced to tears because of a person who is extremely rude and has no feelings." Meads continued to receive written and telephonic demands for payment in full. The remainder of the written communications were on CCS Collection Group stationery, which includes a prominent graphic stating: "A Division of Citicorp Credit Services, Inc."

Citibank is a national bank, and CCSI is a Delaware corporation. Both are wholly-owned subsidiaries of Citicorp. CCSI is a service corporation whose functions include consumer solicitation, credit authorization, credit marketing and credit-related litigation, as well as collections. CCSI services Citibank and other subsidiaries of Citicorp; and according to CCSI, it does not perform these functions for any entity which is not controlled and owned by Citicorp. Collections accounted for 18.6% of CCSI's expenses in 1986, and 15.8% in 1987. The collections aspect of CCSI is performed by the CCS Collection Group, which is a division of CCSI and not a separate corporate entity.

Meads contends that Citibank and/or CCSI are subject to the Act and that the actions of CCSI in attempting to collect the outstanding Visa debt constitutes a tort.

## DISCUSSION

### (A) Intentional Infliction of Emotional Distress

CCSI seeks to have the Court rule that its actions cannot, as a matter of law, be described as tortious. Summary judgment on this issue is improper.

Dean Prosser summarizes the tort of intentional infliction of emotional distress as follows:

> So far as it is possible to generalize from the cases, the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.

Prosser, *Law of Torts* 56 (4th ed. 1971). Indeed, Prosser points out that the tort developed, to some extent, as a response to abusive collections practices by creditors and debt collection agencies. *Id.* at 56 & nn. 92–99.

"Georgia has long recognized a cause of action for intentional infliction of emotional distress." *Thomas v. Ronald A. Edwards Construction Company,* 163 Ga.App. 202, 204, 293 S.E.2d 383 (1982). *Thomas* identifies tortious conduct as that which is " 'so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff.' " *Id.* at 204, 293 S.E.2d 383 (*quoting Georgia Power Company v. Johnson,* 155 Ga.App. 862, 863, 274 S.E.2d 17 (1980)). Georgia courts have sustained claims premised on abusive debt collection practices, despite the validity of the underlying debt. *See, e.g., American Finance & Loan Corporation v. Coots,* 105 Ga.App. 849, 125 S.E.2d 689 (1962); *American Security Company v. Cook,* 49 Ga.App. 723, 176 S.E. 798 (1934).

Although it is clear that simply filing a lawsuit is not "outrageous conduct" capable of sustaining an emotional distress claim, *e.g., Johnson, supra,* there appear to be few, if any, other Georgia decisions where a court has felt authorized to dispose of such a claim on summary judgment. It appears to the Court that the nature of the claim—identifying conduct which exceeds the bounds tolerated by decent society—is particularly suited to resolution by the representatives of the society sitting as a jury. The Court is incapable of

ruling, as a matter of law, that this conduct was or was not outrageous.

Meads has identified a series of telephone calls in which it is alleged the callers were so abusive as to reduce his wife to tears. The communications were not isolated events, but allegedly occurred with substantial frequency (at times more often than once per week) over a four-month period. Further, calls were made to Meads' home and his place of work. In sum, Meads alleges that the conduct was intended to create distress, that it was foreseeable that such a course of conduct would create distress and that both he and his wife suffered verifiable emotional and physical complaints as a direct result of the actions by CCSI.

It would be specious to deny that the collection efforts of CCSI were not intended at least to "stir up" Meads into action regarding the overdue debt. Whether CCSI remained in the realm of acceptable collections practices or crossed the obscure line into tortious conduct is a question that a jury must answer; accordingly, summary judgment as to the claim for intentional infliction of emotional distress will be denied.

(B) *Fair Debt Collection Practices Act*

■ The question of whether the Act is applicable here is less clear. After a careful reading of the statute and consideration of the rather limited case law, however, the Court determines that neither CCSI nor Citibank are "debt collectors" under the provisions of the Act.

Debt collectors subject to the Act are defined in 15 U.S.C. § 1692a(6):

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ... [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person

is collecting or attempting to collect such debts.... The term does not include—

> \*    \*    \*    \*    \*    \*

> (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts.

Thus, actual creditors—the extenders of credit or *bona fide* assignees—generally are not subject to the Act. If, however, the creditor attempts to collect the debt under an assumed name, or if the creditor was assigned the debt after default for the specific purpose of collection, then the creditor will be a debt collector under the Act. *See Kempf v. Famous Barr Company*, 676 F.Supp. 937, 938 (E.D.Mo.1988).

CCSI argues that it falls within the ¶ (6)(B) exclusion; while Meads contends such exclusion is irrelevant because the creditor, Citibank, is attempting to collect the debt by "us[ing] any name other than [its] own which would indicate that a third person is collecting or attempting to collect such debts."

There appears to be no reported decision discussing this type of corporate relationship or the (6)(B) exclusion. It appears to the Court, however, that the instant situation is precisely one sought to be excluded under (6)(B), and that neither Citibank nor CCSI are subject to the Act. The Court's result is supported by the cases which reiterate that the Act is directed at *independent* debt collectors. *See, e.g., United States v. Central Adjustment Bureau, Inc.*, 823 F.2d 880 (5th Cir.1987); *Kimber v. Federal Financial Corporation*, 668 F.Supp. 1480 (M.D.Ala.1987). In *Central Adjustment Bureau*, the Fifth Circuit rejected the defendant's equal protection argument premised on the Act's limited applicability to independent debt collection agencies. The Court stated, "the purpose of the Act is to prevent abusive collection practices and Congress identified independent

debt collectors as the 'prime source of egregious collection practices.'" 823 F.2d at 880–81. *Kimber* more fully explains Congress' rationale:

> Th[e] history [of the Act] reflects that the target and emphasis of the Act are "third-party" or "independent" collectors of "past-due" or "delinquent" debts. As the Senate Committee that considered the Act wrote,
>
>> "The committee intends the term 'debt collector,' subject to the exclusions discussed below, to cover all third persons who regularly collect debts for others. *The primary persons intended to be covered are independent debt collectors.*"
>
> The Committee explained that it limited the Act's coverage to third-party collectors of past due debts because,
>
>> "Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them."

*Kimber, supra* at 1485–86 (*quoting* S.Rep. No. 95–382, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Ad.News 1695, 1696 & 1697) (emphasis added by Judge Thompson).

In the instant case, CCSI meets the requirements of the ¶ (6)(B) exclusion. CCSI is collecting debts for a creditor with whom it is related by corporate control under the Citicorp umbrella; CCSI's principal function is solicitation and marketing of credit accounts, not collections; and CCSI services only Citicorp affiliates. Moreover, excluding CCSI from the ambit of the Act appears to fall within the rationale of the Act. All correspondence regarding the debt is clearly identified with the Citicorp name; thus, the parent of the actual creditor is readily identified with the collection practices of CCSI. Presumably, the organization will exercise the self-control that Congress believes inhibits the more egregious practices utilized by independent debt collectors.

Meads' argument that the "name change" (CCSI collecting for Citibank) automatically triggers the Act under ¶ (6), ignores the ¶ (6)(B) exclusion altogether. As *Kimber* points out, the Act is not a model of "drafting clarity," 668 F.Supp. at 1484; however, the Court cannot accept Meads' interpretation of the Act which renders the specific (6)(B) exclusion meaningless. The exclusion expressly permits an entity who is *not* the actual creditor to collect the creditor's debts if it meets the exclusion's requirements. It follows that the new entity must have a name different from the original creditor. Under Meads' interpretation, whenever the (6)(B) exclusion becomes operative, the original creditor automatically becomes liable under the Act. This result cannot be intended. Moreover, the result does not follow from a literal interpretation of the statute's language. The creditor is not collecting the debt under an assumed name; rather, a separate and excludable entity is collecting the debt.

The Court finds that both the language and the intent of the Act support the conclusion that neither CCSI nor Citibank are debt collectors under its provisions. Accordingly, the claims under the Fair Debt Collection Practices Act will be dismissed.

CONCLUSION

Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to the claims arising under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* The Clerk of the Court is directed to enter an appropriate judgment dismissing those claims. The motion is DENIED in all other respects.