Evelyn CIRKOT

v.

DIVERSIFIED FINANCIAL SYSTEMS,
INC., and Louis Haddad.

Evelyn CIRKOT

v.

DIVERSIFIED FINANCIAL SYSTEMS,
INC., and Scott E. Beatty.

Civ. A. Nos. 3:92–379, 3:92–380.

United States District Court,
D. Connecticut.

Nov. 30, 1993.

942

·Joanne S. Faulkner, New Haven, CT, for plaintiff.

Kevin J. Burns, (Cohen, Hoheb and Auger) Hartford, CT, for defendants.

JOSÉ A. CABRANES, Chief Judge:

These are consolidated actions [1] for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and parallel provisions of state law. Pending before the court are the plaintiff's motions for summary judgment.

## BACKGROUND

The following facts are not disputed by the parties. On January 22, 1991, the plaintiff, a Connecticut resident, entered into a loan for personal purposes with Housatonic Bank & Trust Company. On or about May 29, 1992, the Federal Deposit Insurance Corporation ("FDIC"), after having taken over the bank and coming into possession of the plaintiff's loan, assigned the loan to Diversified Financial Systems, Limited Partnership of Indiana ("Diversified, L.P."). The FDIC notified the plaintiff of this assignment in a letter dated June 25, 1992.[2] The plaintiff's loan was in default at the time it was acquired by Diversified, L.P.[3]

The principal business purpose of Diversified, L.P., which purchases loan portfolios from the FDIC, is the liquidation of these loans.[4] The defendant Diversified Financial Systems, Inc. ("DFSI") is the "sole general partner" of Diversified, L.P.,[5] and regularly collects the debts owed to Diversified, L.P.[6] DFSI does not collect solely for Diversified, .L.P.[7] and "is engaged primarily in the business of providing collection services for companies who have acquired loan portfolios from the [FDIC], [RTC] and other sources." [8]

DFSI mailed two letters to the plaintiff, dated July 9, 1992 and August 14, 1992, both of which contained the name of the defendant Scott E. Beatty, an Account Manager for DFSI. The August 14 letter, signed by Beatty, reads in relevant part:

> You are further notified that if you are a "consumer" and this is a "debt" as defined by Title 15, United States Code 1692G, unless you dispute the validity of this debt,

1. On December 9, 1992, the court issued a scheduling order which consolidated these two actions for pretrial purposes only. In this Ruling, Evelyn Cirkot v. Diversified Financial Systems, Inc., and Louis Haddad, 839 F.Supp. 941, Civil Action No. 3:92–379 (JAC), will be referred to as "No. 379," and Evelyn Cirkot v. Diversified Financial Systems, Inc., and Scott E. Beatty, 839 F.Supp. 941, Civil Action No. 3:92–380 (JAC), will be referred to as "No. 380."

2. See Responses to Plaintiff's Request for Admissions (filed Dec. 8, 1992) (doc. #23 in No. 379) (doc. #27 in No. 380) ("Request for Admissions"), Ex. C.

3. Id. at ¶8.

4. Id. at ¶4.

5. Affidavit of Gordon G. Sherk, dated Mar. 10, 1993 ("Sherk Affidavit"), at ¶4. The Sherk Affidavit is attached as Exhibit C to the Defendants'

Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (filed Mar. 17, 1993) (doc. #42 in No. 379) ("Defendants' Memorandum in No. 379"), (filed Apr. 5, 1993) (doc. #35 in No. 380) ("Defendants' Memorandum in No. 380"), (collectively, "Defendants' Memoranda").

6. Request for Admissions at ¶¶5, 9.

7. See Defendants' Reply Memorandum to Plaintiff's Supplemental Memorandum Dated August 31, 1993 (filed Sept. 14, 1993) (doc. #51 in No. 379) (doc. #42 in No. 380) ("Defendants' Reply"), at· 1–2.

8. See. Defendants' Response to Plaintiff's Production Request No. 5 ("Production Request No. 5"), a portion of which is attached to Plaintiff's Supplemental Memorandum in Support of Plaintiff's Motion for Summary Judgment (filed Sept. 1, 1993) (doc. #50 in No. 379) (doc. #41 in No. 380) ("Plaintiff's Supplemental Memorandum").

or any portion thereof, within thirty (30) days after receipt of this notice, we will assume the debt to be valid. If you are a "consumer" and this is a "debt", as above defined, and you notify us in writing within the said thirty (30) day period, that the debt, or any portion thereof, is disputed, we will then obtain verification of the debt or a copy of the judgment against you and we will mail you a copy of such verification or judgment.[9]

On August 6, 1992, the defendant Louis Haddad, a Special Investigator for DFSI, placed a handwritten note in the plaintiff's mail box, without postage. The envelope states: "Urgent—Open Immediately" and the handwritten portion of the letter reads as follows:

> Read my card—I will be handling your case & this area. If you wish not to[,] call 1–800–851–4863 Scott Beatty to settle[.] My special agents will remain in your area to <u>collect</u>. <u>Believe me</u>. Call within 24 hours.[10]

In No. 379, the plaintiff alleges that Haddad's letter violates 15 U.S.C. § 1692d. That section provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

The plaintiff also maintains that the defendant Haddad falsely misrepresented that he intended to remain in the area to collect the debt, a violation of § 1692e(10), which forbids the use of any false representation or deceptive means in connection with the collection of a debt. The plaintiff emphasizes that Haddad was in Connecticut—where the plaintiff resides—only three days out of the entire month of August 1992 and that his office is located in Massachusetts.[11] Finally, the plaintiff alleges violations of § 1692e(11) (which requires disclosure in all communications made to collect a debt) and 1692f (which prohibits unfair or unconscionable debt collection practices).

In No. 380, the plaintiff alleges that the letters of July 9 and August 14 sent by Scott Beatty violate § 1692e(11) in failing to provide the required disclosure. The plaintiff further alleges that the notice of the debt contained in the August 14 letter fails to satisfy § 1692g, which requires written notice of the debt within five days after the initial communication by a debt collector to a consumer.

The plaintiff filed a motion for summary judgment as to liability only in No. 379 on February 8, 1993 and in No. 380 on February 23, 1993. After full briefing, the court heard oral argument on July 19, 1993 on both motions and reserved decision.

## DISCUSSION

### I.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in the original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) (Feinberg, C.J.), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party

---

9. *See* Request for Admissions, Ex. A.

10. *See id.,* Ex. D, E.

11. *See* Defendants' Response to Plaintiff's First Set of Interrogatories, Nos. 4, 6 (filed Dec. 23, 1992) (doc. # 28 in No. 379) (doc. # 26 in No. 380).

may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (*quoting S.E.C. v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

■ Although the plaintiff has alleged that the defendant has violated several provisions of the FDCPA, the plaintiff need only show one violation in order to recover under the statute. *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993); *Rosa v. Gaynor,* 784 F.Supp. 1, 3 (D.Conn.1989); *see also* 15 U.S.C. § 1692k (establishing liability for "any debt collector who fails to comply with any provision of this subchapter").

## II.

The threshold question is whether DFSI is a "debt collector" as that term is defined under the FDCPA. The plaintiff argues that DFSI is indeed a debt collector and is therefore subject to the FDCPA's requirements and prohibitions. The defendants, on the other hand, maintain that DFSI falls within the definition of "creditor" in § 1692a(4) or, alternatively, within the exception to the definition of "debt collector" in § 1692a(6)(B). As a result, the defendants maintain that DFSI is not covered by any provisions of the FDCPA.

■ As an initial matter, it should be noted that the FDCPA is remedial in nature and should be liberally construed.

The [Consumer Credit Protection] Act [of which the FDCPA is a part] is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Bd. of Governors,* 473 F.2d 1210, 1214 (2d Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973). Troubled by "the serious and widespread abuses in this area and the inadequacy of existing State and Federal laws," *see* S.Rep. No. 95-382, 95th Cong., 1st Sess., *reprinted in* 1977 U.S. Code Cong. & Admin. News, 1695, 1697, "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive collection practices." *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 27 (2d Cir.1989). The FDCPA is based on the premise "[t]hat every individual, whether or not he owes [a] debt, has a right to be treated in a reasonable and civil manner." 123 Cong.Rec. 10241 (1977) (remarks of Rep. Frank Annunzio).

Section 1692a(6) contains alternative definitions of the term "debt collector." First, a debt collector is one who conducts "any business the principal purpose of which is the collection of any debts." A debt collector is *also* one who "regularly collects or attempts to collect ... debts ... due another." The term "debt collector" does *not* include one whose principal business is not debt collection *and* who collects debts only for related or affiliated entities. 15 U.S.C. § 1692a(6)(B). A "creditor" is one either who offers or extends credit or to whom a debt is owed, but does not include one who receives an assignment or a transfer of a debt in default solely for the purpose of facilitating its collection for another. 15 U.S.C. § 1692a(4).

A brief examination of some of the case law regarding these definitions sheds some light on the issue of whether DFSI is a debt collector for purposes of the FDCPA. In *Little v. World Financial Network, Inc.,* Civil Action No. N-89-346 (TFGD) (D.Conn. July 15, 1990), Judge T.F. Gilroy Daly held that the defendant—which had purchased the plaintiff's account after it was in default and whose principal activity was the collection of debts—was a debt collector within the purview of the FDCPA. Similarly, in *Kimber v. Federal Financial Corp.,* 668 F.Supp. 1480, 1486 (M.D.Ala.1987), the court held that the defendant corporation was a debt collector "because the corporation regularly collects

debts and debt collection is its principal purpose, and because the debts . . . were already in default when they were assigned to the corporation. . . ."

Conversely, in *Meads v. Citicorp Credit Services, Inc.*, 686 F.Supp. 330, 334 (S.D.Ga. 1988), the court held that the defendant was *not* a debt collector since it was "related by corporate control" to the company that originally extended the credit and since its principal function was the solicitation and marketing of credit accounts, not collections. In *Kempf v. Famous Barr Co.*, 676 F.Supp. 937, 938 (E.D.Mo.1988), the court held that an employee of the entity that originally extended the credit would not be considered a debt collector if the employee acted solely in the name of the creditor and did not purport to work for a third person. Furthermore, in both *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985), and *Kizer v. Finance America Credit Corp.*, 454 F.Supp. 937, 939 (N.D.Miss.1978), the defendants were not deemed debt collectors inasmuch as they acquired the debts prior to default.

■ The defendants rely mainly on *Meads* and *Kempf* for the proposition that DFSI is a bona fide assignee and hence a creditor under § 1692a(4).[12] Unlike the defendants in those cases, however, DFSI is in no way affiliated either with the entity that originally extended the credit—the Housatonic Bank & Trust Company—or with the entity that ultimately sold the plaintiff's debt to Diversified, L.P.—the FDIC. Furthermore, the defendants here have explicitly revealed in one of their discovery responses that DFSI "is engaged primarily in the business of providing collection services for companies who have acquired loan portfolios from the [FDIC], [RTC] and other sources."[13] Therefore, unlike the defendant in *Meads*, and like the defendants in *Little* and *Kimber*, DFSI's principal purpose is the provision of debt collection services.[14] As a result, it appears that DFSI falls within the definition of "debt collector" of § 1692a(6) and, correspondingly, that it does not satisfy the exception to that definition under § 1692a(6)(B).

■ The defendants further submit that DFSI "is a different animal" from the defendants in *Little* and *Kimber* because DFSI was not created *solely* for the purpose of collecting debts and does not obtain debts *solely* for the purpose of facilitating their collection.[15] In *Little*, however, Judge Daly expressly noted that the defendants engaged in activities other than debt collection.[16] Simply put, the definition of "debt collector" in § 1692a(6) includes—while the exception to that definition in § 1692a(6)(B) expressly excludes—those whose *principal* purpose is debt collection. As the defendants have conceded that DFSI is "primarily"—even if not solely—engaged in the provision of debt collection services, and as Diversified, L.P. acquired the plaintiff's debt subsequent to default, DFSI clearly falls within the parameters of *Little* and *Kimber*. Accordingly, DFSI cannot successfully invoke the § 1692a(6)(B) exception.

The inapplicability of § 1692a(6)(B) is further evidenced by the defendants' admission that DFSI does not collect only for related or affiliated entities.[17] Indeed, by its own ad-

12. *Perry* and *Kizer* are clearly inapplicable here inasmuch as Diversified, L.P. acquired the plaintiff's debt *after* it was in default. *See* note 3, *supra.*

13. *See* Production Request No. 5, attached to the Plaintiff's Supplemental Memorandum; *see* note 8, *supra.*

14. The court is convinced that the defendants' admission that DFSI is "primarily engaged" in the collection of debts satisfies the requirement of § 1692a(6) that a debt collector's "principal purpose" be the collection of debts. Indeed, the word "primary" is defined as "principal," as in "the [primary or principal] purpose." *See also* Webster's New Collegiate Dictionary 906 (1979). *See also* Webster's Third New International Dictionary of the English Language Unabridged (1976) 1800 (defining "primary" as "chief" or "principal").

15. Defendants' Memorandum in No. 379, at 12; Defendants' Memorandum in No. 380, at 14.

16. *Little,* slip op. at 4.

17. *See* Defendants' Reply at 1–2; *see* note 7, *supra.* The defendants attempt to qualify this admission by asserting that DFSI is in fact a minority shareholder of First Lake Corporation (an entity for whom DFSI collects debts). *See* Defendants' Reply at 2. This argument, however, is unsupported by any evidence whatsoever, and is highly dubious in light of the fact that

missions, DFSI satisfies *neither* of the two cumulative requirements of § 1692a(6)(B). Conversely, the defendants' concessions suggest that DFSI meets both of the alternative definitions of "debt collector" under § 1692a(6). In other words, even assuming *arguendo* that DFSI's principal purpose were *not* the collection of debts, DFSI could still be considered a "debt collector" since DFSI regularly collects debts owed or due another.

The defendants assert in their Statement of Material Facts (filed Feb. 22, 1993) that the collection of debts is not the principal purpose of DFSI and that the debt collection activities of the defendant are limited to the collection of its own debts or the debts of its affiliated entities.[18] Both of these assertions are completely unsupported by the record, and are in fact directly contradicted by the defendants' own admissions.[19] These vague and conclusory denials are not sufficient to create a genuine issue of material fact where none would otherwise exist. *See Quinn*, 613 F.2d at 445; *Knight*, 804 F.2d at 12.

Similarly, the Sherk Affidavit and the Affidavit of Diane Bruch[20] do not suffice to raise a genuine issue of material fact. Other than the conclusory assertion in the Bruch Affidavit, at ¶ 1, that DFSI "is not a debt collecting agency," nothing in these affidavits refutes the defendants' own admissions that (1) DFSI "is engaged primarily in the business of providing collection services for companies who have acquired loan portfolios from the [FDIC], [RTC] and other sources,"[21] and (2) DFSI does not collect solely for affiliated entities.[22] Moreover, these affidavits, even including ¶ 1 of the Bruch Affidavit, simply do not produce sufficient specific facts to establish that there is a genuine issue of material fact for trial regarding either of these two determinative issues.

It is worth noting that Judge Daly, in the *Little* case, observed that the alternative definitions of "debt collector" in § 1692a(6) precisely identify the "two situations where natural constraints do not protect against objectionable debt collection practices."[23] The defendant argues that since it is not an independent, third-party debt collector, its conduct toward consumers is constrained by the desire to protect its good will.[24] First, the defendants' admission that it does not collect solely for affiliated entities[25] suggests that, at least in some instances, DFSI is arguably a third-party debt collector. Second, the independent, third-party debt collector represents only *one* of the two groups of "debt collectors" targeted by the FDCPA. Third, the defendants' counsel admitted at oral argument that DFSI is not at all likely to have any further contact with the plaintiff after the resolution of this matter. Contrary to the defendants' assertions, their conduct towards the plaintiff in this action powerfully demonstrates the failure of any "natural con-

First Lake Corporation is a subsidiary of National Bancorp, Inc. *See* Agreement between First Lake Corporation and DFSI, attached to the Plaintiff's Second Supplemental Memorandum in Support of Plaintiff's Motion for Summary Judgment (filed Sept. 27, 1993) (doc. # 52 in No. 379) (doc. # 43 in No. 380). The defendants' speculative and conclusory claims in this regard, unsworn and unsupported by the record, are not sufficient to create a genuine issue of material fact. *See Quinn*, 613 F.2d at 445; *Knight*, 804 F.2d at 12.

18. *See* Defendants' Statement of Material Facts (filed Feb. 22, 1993) (doc. # 41 in No. 379), at ¶¶ 1–2. The Defendants' Statement of Material Facts is also attached as Exhibit A to the Defendants' Memoranda.

19. *See* notes 7, 8, 13, and 17, *supra*, and accompanying text.

20. The Affidavit of Diane Bruch, dated Feb. 17, 1993 ("Bruch Affidavit"), is attached as Exhibit B to the Defendants' Memoranda.

21. *See* notes 8 and 13, *supra*, and accompanying text.

22. *See* notes 7 and 17, *supra*, and accompanying text.

23. *Little*, slip op. at .7.

24. Defendants' Memorandum in No. 379 at 11–12; Defendants' Memorandum in No. 380 at 13–14.

25. *See* Defendants' Reply at 1–2; *see* note 7, *supra*.

straints."[26]

In sum, the defendants' efforts to distinguish this case from *Little* and *Kimber*—as well as their efforts to bring it in line with *Meads* and *Kempf*—are unpersuasive and unsupported by the record. The court therefore finds that DFSI is in fact a "debt collector" as that term is defined by the FDCPA.

## III.

### A.

 The next question is whether the defendants violated the FDCPA. In No. 379, there can be no doubt that Haddad's handwritten letter constitutes a direct violation of § 1692d. Indeed, the defendants' counsel virtually admitted as much at oral argument, refusing to take the position that Mr. Haddad's letter could not be perceived by an unsophisticated consumer as a threatening, harassing, or abusive attempt to collect a debt.[27] The defendants conceded that Mr. Haddad's conduct was regrettable and they represented that he has been reprimanded.

The Official Staff Commentary of the Federal Trade Commission to the FDCPA further confirms that Haddad's letter constitutes an implied threat in violation of § 1692d(1). As examples, the FTC highlights statements such as "We're not playing around here—we can play tough" and "We're going to send somebody to collect for us one way or the other."[28] Haddad's handwritten letter of August 6, 1992 was placed in the plaintiff's mail box without postage in an envelope which stated: "Urgent—Open Immediately." Inside, the note warned: "My special agents will remain in your area to collect. Believe me." This underscored language clearly falls into the category of implied threats described by the FTC. Indeed, "Special Investigator" Haddad, in what can only be described as a threatening, harassing, and abusive attempt to collect the plaintiff's debt, deliberately informed the plaintiff that he knew where she lived. Put simply, one of the central purposes of the FDCPA is to prevent precisely this type of conduct.

### B.

The same holds true for No. 380. Neither of the two letters from the defendant Scott Beatty provided the disclosure required by 15 U.S.C. § 1692e(11) and the defendants do not argue otherwise. This section requires a debt collector, in all communications made to collect a debt, to state: "This is an effort to collect a debt and any information obtained will be used for that purpose." Moreover, the notice required by § 1692g, and provided by the letter of August 14, clearly did not come within five days after the initial communication—by letter on July 9—by the debt collector to the consumer. As with No. 379, there is no genuine issue of material fact concerning the question of whether the defendants violated the FDCPA.

## CONCLUSION

Based on the record, including the oral arguments of counsel, and for the reasons stated above, it is hereby ORDERED that:

1. The plaintiff's Motion for Summary Judgment in No. 379 (filed February 8, 1993) (doc. # 34) is hereby GRANTED.

2. The plaintiff's Motion for Summary Judgment in No. 380 (filed February 23, 1993) (doc. # 30) is hereby GRANTED.

3. The plaintiff shall submit, by no later than December 23, 1993, evidence in support of her claim for damages as well as a request for a hearing on damages if one is desired.

It is so ordered.

---

26. *See* Part III, *infra,* which finds that the defendants violated the FDCPA in both No. 379 and No. 380.

27. "Both the purposes of the FDCPA and the history of its enforcement support a finding that the statute ... protect[s] the least sophisticated consumer." *Rosa v. Gaynor,* 784 F.Supp. at 3.

The "least sophisticated consumer" standard has been widely adopted by district courts in this circuit and by federal appellate courts that have considered the issue, including our own Court of Appeals. *See Clomon,* 988 F.2d at 1318.

28. *See* 53 Fed.Reg. 50097, 50104 (Dec. 13, 1988).