**Benjamin PAVONE, an individual, Plaintiff,**

v.

**CITICORP CREDIT SERVICES, INC.; Citicorp, Inc., Defendants.**

**No. 96–0603–IEG(AJB).**

United States District Court, S.D. California.

July 8, 1997.

Benjamin Laurence Pavone, Law Offices of Benjamin L Pavone, San Diego, CA, for plaintiff.

Stephen M. Nichols, Karol H. Ingber, Walsworth Franklin Bevins and McCall, Orange, CA, for defendant.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND DENYING PLAINTIFF'S MOTION TO STAY THE FEDERAL PROCEEDING [Doc. ## 49, 60]

GONZALEZ, District Judge.

Two motions in this case came on regularly for hearing on June 16, 1997, the Honorable Irma E. Gonzalez presiding. Defendant Citicorp Credit Services, Inc. ("CCSI"), moved to dismiss or, in the alternative, for summary judgment. Plaintiff Benjamin Pavone moved to stay the federal proceedings.

### BACKGROUND

Pavone, an attorney proceeding *pro se*, brings this action alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692o ("the FDCPA"), by CCSI in attempting to collect on Pavone's delinquent Citibank Visa account. Pavone also brings state law causes of action under the Robbins–Rosenthal Fair Debt Collection Practices Act, Cal.Civ.Code § 1788.11, and for intentional infliction of emotional distress. The currently operative complaint is the first amended complaint, filed September 20, 1996.

Pavone admits that in January 1994, he became unable to make payments on his Citibank Visa account, which then had a balance of approximately $4,424.85. For about the next two years, Pavone attempted to negotiate with Citibank an agreement whereby Citibank would "charge off" his debt, by which he apparently means that Citibank would cease charging him interest and fees in exchange for his agreement to pay off the account. Pavone eventually made five payments on his account in 1994 and three payments on the account in 1995. Pavone states that during 1995, he was able to make payments to Citibank but refused to do so because of Citibank's failure to follow the "industry practice" of "charging off" his debt.

Pavone charges that during 1994 and 1995, CCSI telephoned him repeatedly about his delinquent account in spite of his oral and written requests that CCSI communicate with him only in writing. In discovery, CCSI has admitted that it telephoned Pavone approximately thirty-seven times over a period of about eighteen months. Specifically, CCSI telephoned Pavone once in March 1994, four times in April 1994, five times in May 1994, twice in June 1994, twice in July 1994, six times in August 1994, five times in September 1994, twice in May 1995, once each in June and July 1995, four times in August 1995, and four times in September 1995. Most of the calls were at least six or seven days apart; however on two occasions in August 1994 and on three occasions in August and September 1995, two calls occurred on consecutive days. CCSI also admits that on approximately nine occasions Pavone asked CCSI, either orally or in writing, not to telephone him. (CCSI's Supp.Resp. to Pl.'s Req. for Adms. Set Two.)

Pavone alleges that CCSI representatives made certain statements during these telephone calls and that these statements were harassing because the statements "misrepresented" Pavone's position about paying off his account or were made without regard "for the truth of the situation." (Compl. at ¶ 57.) For example, Pavone alleges that he recorded one conversation with a CCSI representative, with the representative's consent. Pavone told the representative that he wished to negotiate

the matter in writing. The representative responded, "Okay, but nothing's getting done on this. Nothing's getting negotiated." (Compl. at ¶ 57.) Later, the representative stated, "Okay. What do you want to do on this? Plain and simple. Do you want to pay it? Do you want to pay it off?" (Compl. at ¶ 58.) The representative also stated, "I'll go ahead and just state on here that you didn't want to discuss this account at this point." (Compl. at ¶ 59.) Pavone alleges that this last statement mischaracterized Pavone's position and was therefore "positively abusive and harassing." (Compl. at ¶ 59.) Pavone also alleges that the representative's concluding statement, "Okay? You have a good day," was harassing,

> because he asked plaintiff a question designed supposedly to confirm that plaintiff refused to discuss the account—which he knew was not true—but did not give plaintiff a chance to clarify the matter, as plaintiff obviously was willing to discuss the matter, just not through the medium that the representative attempted to force upon him. However, plaintiff was not given an opportunity to clarify the matter, as the representative said "okay?" and then immediately stated "You have a good day," which indicated he was going to hang up the phone, thus precluding plaintiff from having enough time to clarify his position—for the fifth time.

(Compl. at ¶ 60.) Pavone complains that the representative's statements "tended to objectify and, with mean-spirited tone and demeanor, dehumanize plaintiff as an object whose only function was to pay or not pay." (Compl. at ¶ 105.) Pavone alleges that in another conversation, a CCSI representative asked him repeatedly, "Are you going to pay, yes or no," until Pavone hung up. (Compl. at ¶ 61.)

Pavone's three FDCPA claims are as follows. First, he alleges that CCSI's conduct violated 15 U.S.C. § 1692c(c), which provides as follows:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.
>
> If such notice from the consumer is made by mail, notification shall be complete upon receipt.

15 U.S.C. § 1692c(c). However, Pavone does not allege that he ever notified CCSI in writing that he wished CCSI to cease further communication with him, only that he notified CCSI that he wished CCSI to communicate with him only in writing.

Second, Pavone alleges that CCSI's conduct violated 15 U.S.C. § 1692d, which provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." One example of conduct violating this section is "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). *Cf. United States v. Central Adjustment Bureau, Inc.,* 667 F.Supp. 370, 376 (N.D.Tex.1986), *aff'd,* 823 F.2d 881 (5th Cir.1987) (finding harassment where debt collector made as many as four to five telephone calls to the same debtor in one day); *Bingham v. Collection Bureau, Inc.,* 505 F.Supp. 864, 873 (D.N.D.1981) (finding harassment where debt collector called back immediately after debtor hung up on collector). Pavone does not claim that any CCSI representa-

tive ever called more than once a day or called him at an inconvenient hour; indeed, it appears that the greatest frequency of calls was six in one month.

Third, Pavone alleges that CCSI's conduct violated 15 U.S.C. § 1692f, which prohibits use of unfair or unconscionable means to collect a debt. Nonexclusive examples of such conduct include (1) collecting any amount not expressly authorized by the agreement creating the debt or permitted by law; (2) acceptance of post-dated checks unless the consumer is notified of the intent to deposit the check before it is deposited; (3) solicitation of post-dated checks with the intent to threaten or institute criminal prosecution; (4) depositing or threatening to deposit a post-dated check prior to the date on the check; (5) placing collect telephone calls; (6) and communicating with a consumer about a debt by post card. 15 U.S.C. § 1692f. Pavone does not allege that CCSI engaged in any conduct comparable to these examples.

On January 24, 1997, the Court denied without prejudice defendants' motion to dismiss the first amended complaint for lack of subject matter jurisdiction. As an initial matter, the Court noted that the complaint failed to set forth a statement of the grounds for jurisdiction as required by Fed.R.Civ.P. 8(a).[1] In the absence of the required jurisdictional statement, the Court presumed that subject matter jurisdiction was based on the alleged existence of a federal question under the FDCPA. *See* 28 U.S.C. § 1331; 15 U.S.C. § 1692k(d) (providing for district court jurisdiction over FDCPA enforcement actions). CCSI contended that its debt collection activities came within the "in-house exemption" to the FDCPA definition of "debt collector" and that it therefore was not subject to the FDCPA. The Court, although finding that Pavone had not carried his burden of demonstrating the applicability of the federal statute, denied the motion without prejudice so that Pavone could conduct additional discovery on the jurisdictional issue.

On May 15, 1997, Pavone filed a complaint against CCSI in San Diego Superior Court, alleging that CCSI's debt collection practices violate the right to privacy guaranteed by Article I, Section 1 of the California Constitution. The complaint, denominated a class action with Pavone acting as both class counsel and named plaintiff, alleges claims for declaratory and injunctive relief. On the eve of the hearing on these motions, CCSI removed the state court action to this Court. By an order issued today, the Court remands that action to state court.

## DISCUSSION

CCSI now renews its motion to dismiss for lack of subject matter jurisdiction and also moves, in the alternative, for summary judgment. Both parties state that discovery is now complete. Plaintiff moves for a stay of this action for 150 days, which he believes is sufficient time to litigate his state court action to summary judgment.

### A. Evidentiary Matters

While Pavone has not introduced any evidence in support of his opposition to CCSI's motion to dismiss or for summary judgment, he has submitted three volumes of lodgments in support of his motion to stay the proceedings. Pavone has both requested judicial notice of these lodgments and submitted his declaration purporting to authenticate them. Judicial no-

---

1. Although a paragraph in the first amended complaint purports to address jurisdiction, the allegations of that paragraph do not state any grounds for federal subject matter jurisdiction. The paragraph reads, "Jurisdiction. Plaintiff is a citizen of California. Creditor does business in this federal district, or is otherwise subject to jurisdiction of this feder-al judicial district. The telephone calls complained of in this action were made to plaintiff's residence which is located in the County of San Diego." (Compl. at ¶ 6.) These allegations may address personal jurisdiction or venue, but provide no basis for federal subject matter jurisdiction.

tice is proper where a fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). Of course, documents that are not proper subjects of judicial notice may still be admissible as evidence if they are properly authenticated, that is, if the proponent introduces evidence sufficient to support a finding that the document is what the proponent claims. Fed.R.Evid. 901(a). Pavone's lodgments fall into several categories, which the Court will address in turn.

■ *Public Record Documents.* Pavone submits copies of his original complaint and first amended complaint in this action; CCSI's answers; a sealing order by this Court; his state court complaint; and pages out of USCCAN reflecting the legislative history of the Consumer Credit Protection Act (of which the FDCPA is a part). These public record documents are proper subjects of judicial notice.

■ *Letters and Credit Card Statements.* These documents are not proper subjects of judicial notice. Moreover, Pavone has taken an unusual approach to authenticating them. Instead of declaring that the copies he has submitted are true and correct copies of the actual documents, he states that he "received the document in the ordinary course of correspondence between myself and CCSI" or that he "was present when the document was signed." However, the Court will consider these documents for the limited purpose of ruling on the instant motions.

■ *Citicorp's Annual Report.* This document is not a proper subject of judicial notice. Pavone declares that "I obtained it by personally making a request to Citibank and later received it in an envelope with Citibank's return address." The Court will consider this document for the limited purpose of ruling on the instant motions.

■ *Drafts of Documents to Be Submitted to State Court.* Pavone submits drafts of documents that he apparently intends to file in his state court action, including a motion for summary judgment and a motion for class certification. These documents are not proper subjects of judicial notice and are irrelevant. Fed.R.Evid. 401. The Court will not consider them.

■ *Deposition Transcripts and Exhibits.* Pavone submits transcripts of the depositions of Terri Ryning and Donald Little and exhibits thereto. The Little deposition transcript is authenticated by the reporter's certificate appearing on page 480 and the Court will consider it. However, the Ryning deposition transcript is not authenticated; the reporter's certificate is unsigned. Pavone attempts to authenticate it by declaring that "I was present when the statements were made. I believe the document reflects the true statements as they were made." This declaration is not sufficient to support a finding that the document is authentic; the Court will not consider it.

*CCSI's Discovery Responses.* The Court will consider the copies of CCSI's verified discovery responses.

■ *Appendices.* Pavone has attached as appendices to his lodgments a separate statement of undisputed facts and a statement "Detailing Significant Events of Plaintiff's Account." These documents are not proper subjects of judicial notice; indeed, they are not evidence. They are part of Pavone's argument and ordinarily would be filed as pleadings. However, because the lodgment volumes were served on opposing counsel, the Court sees no harm in considering these documents.

■ *CCSI's Offer to Compromise.* Pavone submits a copy of a letter to him from CCSI's counsel referencing the instant litigation and offering to settle it. This letter is plainly inadmissible under Fed.R.Evid. 408 and the Court strongly disapproves of Pavone's lodging it for the Court's consideration. It is hereby **ORDERED** that this

document, at page 42 of Pavone's first volume of lodgments, be **STRICKEN** from the record of this case.

## B. Motion to Dismiss or for Summary Judgment

CCSI contends, as it did in its previous motion, that the complaint must be dismissed under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. The issue in this motion, as in the previous motion, is whether CCSI comes within the in-house exemption to the definition of "debt collector" under the FDCPA so as to create a federal question. Alternatively, CCSI contends that it is entitled to summary judgment on the FDCPA claims because it is not covered by the statute.

### 1. Applicable Legal Standard

As the Court explained in its previous order, CCSI's motion to dismiss is a "speaking motion" attacking the existence of subject matter jurisdiction in fact, rather than attacking the sufficiency of the allegations of the complaint. *See Thornhill Publishing Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). Therefore, the Court may consider extrinsic evidence on the jurisdictional question and may resolve factual disputes if necessary. *Id.* at 733. The plaintiff bears the burden of establishing subject matter jurisdiction and the Court must presume that it lacks jurisdiction until the plaintiff demonstrates that jurisdiction exists. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.1989). However, if a Rule 12(b)(1) speaking motion addresses a factual issue that is "an element of the substantive offense as well as a jurisdictional requirement," that issue should be decided under the summary judgment standard of Fed.R.Civ.P. 56, "for a ruling on that issue would be a ruling on the merits." *Thornhill*, 594 F.2d at 733.

Rule 56 provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c). The moving party bears "the initial re-sponsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322, 106 S.Ct. 2548. However, the moving party is not required to negate those portions of the nonmoving party's claim on which the nonmoving party bears the burden of proof. *Id.* at 323, 106 S.Ct. 2548.

Once the moving party demonstrates that there is no genuine issue of material fact, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (quoting F.R.C.P. 56(e)). The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548.

### 2. The FDCPA In–House Exemption

The FDCPA regulates "debt collectors." A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This definition explicitly excludes "any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts." 15 U.S.C. § 1692a(6)(B).

As explained in the previous order, the in-house exemption reflects Congress's finding that "independent debt collectors are the prime source of egregious collection practices." S.Rep. No. 95–382, 95th Cong., 1st Sess. 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1696. Congress considered

that creditors themselves "generally are restrained by the desire to protect their good will when collecting past due accounts," while "independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them." *Id.*

Few reported decisions interpret the in-house exemption. Indeed, a district court writing in 1988 found no reported decision discussing it. *Meads v. Citicorp Credit Services, Inc.*, 686 F.Supp. 330, 333 (S.D.Ga.1988.). The *Meads* court found that CCSI was not covered by the FDCPA because it collected debts for a creditor to whom it was related under the Citicorp corporate umbrella; its principal function was solicitation and marketing of credit accounts, not collections; and it serviced only Citicorp affiliates. *Meads*, 686 F.Supp. at 334. CCSI had presented evidence that collections accounted for 18.6% of its expenses in 1986 and 15.8% in 1988. *Id.* at 332.[2] The Ninth Circuit has noted that the issue of whether the in-house exemption applies requires several factual determinations; therefore, as the Court noted in its previous order, it cannot rely on the *Meads* court's determination regarding CCSI. *See Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994) (declining to determine on appeal whether the exemption applied to CCSI, where issue was not raised in district court).

### 3. Analysis Under the FDCPA

Here, the Court need not decide whether to resolve factual disputes under the Rule 12(b)(1) standard, or simply look for any genuine issue of material fact under the Rule 56 standard, because the facts regarding CCSI's status are uncontroverted.

CCSI has introduced the declaration of its vice president and treasurer, Jerome

O'Grady, and its manager, Terri Ryning, who attest to the following facts. CCSI and Citibank are wholly owned subsidiaries of Citicorp. CCSI performs services for Citibank including credit card marketing, credit support, credit card association relations, information services, collections, credit card security, fraud services, general administrative services, support of credit-related litigation, and legal counsel on credit card and marketing issues. In addition, CCSI performs non-collection services, such as treasury services, for another subsidiary of Citicorp and for a third party entity engaged in securitization transactions. According to O'Grady, "[t]he collection of debts represents only a minor portion of the work performed or responsibility assumed by CCSI." (O'Grady Decl. at ¶ 6.) O'Grady declares that CCSI's expenses for debt collection operations were 22% of its total expenses in 1994, 15% in 1995, and 20% in 1996.

CCSI's evidence demonstrates that (1) it is affiliated by corporate control with the actual creditor, Citibank; (2) it does not collect debts for unaffiliated entities; and (3) its principal business is not the collection of debts. Indeed, debt collection accounted for less than one quarter of CCSI's expenses in the years at issue here.

Pavone has introduced no evidence in support of his opposition to the motion to dismiss or for summary judgment and points to no evidence in his brief. However, as explained above, Pavone has introduced some evidence in support of his motion to stay this action. The Court has independently reviewed those portions of Pavone's evidence that it has agreed to consider and has found no evidence to contradict the evidence submitted by CCSI on the in-house exemption issue. There-

---

**2.** This Court has located only one case other than *Meads* that applies the in-house exemption; in that case, a company that admitted that it was "engaged primarily in the business of providing collection services for companies who have acquired loan portfolios from the [FDIC], [RTC] and other sources" did not qualify for the in-house exemption because its principal purpose was the provision of debt collection services and it did not collect only for related or affiliated entities. *Cirkot v. Diversified Financial Systems, Inc.*, 839 F.Supp. 941, 945–46 (D.Conn.1993).

fore, Pavone has failed to carry his burden under the Rule 12(b)(1) standard for establishing the existence of subject matter jurisdiction and has failed to carry his burden under the Rule 56 standard of demonstrating the existence of a genuine issue of material fact as to whether CCSI is covered by the FDCPA.

Instead of introducing evidence, Pavone makes the following arguments in opposition to CCSI's motions. First, he argues that the issue of applicability of the in-house exemption is intertwined with the merits and therefore cannot be decided on a motion to dismiss for lack of subject matter jurisdiction. Even under a Rule 56 standard, however, CCSI is entitled to judgment as a matter of law on this issue.

Second, Pavone disputes that CCSI's evidence is sufficient to establish that its principal business is not the collection of debts. Pavone argues that even if debt collection is only 20% of CCSI's business, "it may be the single largest 'business' CCSI has." (Opp. to CCSI Mot. at 2.) This type of speculation, however, is not sufficient to sustain Pavone's burden on summary judgment. Pavone has had ample opportunity to prove this proposition through discovery and has failed to do so. Pavone also argues that a jury should be permitted to decide whether, if debt collection is actually CCSI's largest single activity, that activity may constitute its principal business. Even if this "definitional question," as Pavone terms it, were a question of fact for the jury and not a question of law for the Court, Pavone has failed to introduce any evidence that would create such a jury issue. That is, he has failed to introduce any evidence that, in fact, debt collection is CCSI's single largest business.

Third, Pavone argues, in essence, that the purpose of the FDCPA will be frustrated if Citicorp can simply organize its corporate activities so as to avoid the coverage of the statute. In other words, the FDCPA should not permit a creditor to have debt collection activities conducted by a subsidiary, while evading FDCPA coverage by assigning other activities to that subsidiary so that debt collection is not its principal business. Pavone characterizes the in-house exemption as a "loophole" that permits CCSI to evade liability under the law. However, the plain language of the statute sets out the exception for entities that perform debt collection solely for corporate affiliates, including the requirement that debt collection not be these entities' principal business. While Pavone's suggestions for closing this loophole in the FDCPA may be well taken, they must be directed to Congress as this Court has no power to rewrite the statute.[3]

For the foregoing reasons, the Court lacks federal question jurisdiction under the FDCPA and CCSI is entitled to dismissal of all claims. CCSI's motion to dismiss for lack of subject matter jurisdiction is therefore **GRANTED** and its alter-

---

**3.** Pavone makes the curious argument that the in-house exemption violates substantive due process by creating an arbitrary and irrational classification. This argument is difficult to understand. Pavone is not bringing a due process claim against CCSI, nor could he since CCSI is not a state actor. If his contention is that the FDCPA somehow deprives creditors of substantive due process, he has no standing to raise the rights of third parties. If his contention is that the FDCPA somehow creates a substantive due process right to protection from abusive creditors under the Constitution, and simultaneously deprives him of this right by creating the exception, this argument must fail. The Court is confident that no such substantive due process right exists. "As a general matter, the [Su-

preme] Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (internal quotation marks omitted); *see Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Were Pavone bringing a constitutional challenge to the FDCPA, it appears that the Court would have no difficulty in finding that the statute does not violate Pavone's substantive due process rights.

native motion for summary judgment is **DENIED AS MOOT.**[4]

## C. Plaintiff's Motion to Stay the Proceedings

Plaintiff moves to stay this action for a period of time that he believes will be sufficient for him to obtain summary judgment in his state court action. There are several problems with plaintiff's request. First, because the Court lacks subject matter jurisdiction over this action, there is no basis for a stay. Second, plaintiff appears to argue that the outcome of his claim for invasion of privacy under the California Constitution has some bearing on the FDCPA and pendent state law claims pending before this Court. The Court expresses no opinion on the merits of any of plaintiff's state law claims—neither the state constitutional claim pending before the state court, nor the Robbins–Rosenthal and emotional distress claims previously brought before this Court. The Court finds only that it lacks subject matter jurisdiction under the FDCPA because plaintiff has introduced no evidence to show that CCSI is covered by the FDCPA. The merit, or lack thereof, of plaintiff's state law claims has no bearing on this determination. Plaintiff's motion for a stay is therefore **DENIED.**

## D. Defendants' Request for Costs and Attorneys' Fees

CCSI requests an award of its costs and attorneys' fees pursuant to the FDCPA or, in the alternative, Rule 54(d) of the Federal Rules of Civil Procedure.

 Under the "American rule" the prevailing litigant is ordinarily not entitled to collect its attorneys' fees from the losing party. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). "An

award of attorneys' fees to a litigant in federal court is improper in the absence of a contract, an applicable statute, a finding that the losing party acted in bad faith, or other exceptional circumstances." *Sea–Land Service, Inc. v. Murrey & Son's Co.,* 824 F.2d 740, 744 (9th Cir.1987). The FDCPA provides for an award of attorneys' fees and costs to a defendant upon "a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment." 15 U.S.C. § 1692k.

Here, the Court finds no indication that Pavone has acted in bad faith or for the purpose of harassment in bringing this action. Accordingly, CCSI is not entitled to its costs or attorneys' fees under either Rule 54(d) or the FDCPA and the request is hereby **DENIED.**

## CONCLUSION

Plaintiff's request for judicial notice is hereby **GRANTED IN PART** and **DENIED IN PART.** Defendant's motion to dismiss for lack of subject matter jurisdiction is hereby **GRANTED.** Defendant's motion for summary judgment on the FDCPA claims is hereby **DENIED AS MOOT.** Plaintiff's motion to stay the proceedings is hereby **DENIED.** CCSI's request for an award of costs and attorneys' fees is hereby **DENIED.**

**IT IS SO ORDERED.**

---

4. Moreover, even if the Court could find that it had federal question jurisdiction, CCSI would be entitled to summary judgment on the FDCPA claims because its conduct is not regulated by the FDCPA. In that event, the Court would decline to exercise supplemental jurisdiction over the state law claims, particu-

larly in view of the early stage of the litigation and the pendency of a state court action involving the same parties and arising out of the same transactions. 28 U.S.C. § 1367(c)(3); *see Schneider v. TRW, Inc.,* 938 F.2d 986, 993–94 (9th Cir.1991); *Wren v. Sletten Constr. Co.,* 654 F.2d 529, 536 (9th Cir.1981).