**Cindy Ann KIMBER, individually and on Behalf of all other persons similarly situated, Plaintiff,**

v.

**FEDERAL FINANCIAL CORPORA-TION, d/b/a Regional Accounts Corporation, Defendant.**

**Civ. A. No. 86–T–023–E.**

United States District Court, M.D. Alabama, E.D.

Aug. 18, 1987.

William Z. Messer, Legal Services Corp. of Alabama, Phenix City, Ala., and James Opp Smith, and David S. Yen, Legal Services Corp. of Alabama, Opelika, Ala., for plaintiff.

Steven K. Champlin, Dorsey & Whitney, Minneapolis, Minn., and Richard H. Gill, Copeland, Franco, Screws & Gill, Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

In this class-action lawsuit, plaintiff Cindy Ann Kimber charges defendant Federal Financial Corporation (FFC) with violating the Fair Debt Collection Practices Act, 15 U.S.C.A. §§ 1692–1692o, in the following ways: by attempting to collect debts from her and other Alabama residents without first giving the debtors the notice required by the Act; and by threatening to sue, and suing, Kimber and others to collect on some of these debts even though, as far as FFC knew, it was not entitled to recover in the suits because the debts were stale. This court has jurisdiction over this case pursuant to 15 U.S.C.A. § 1692k(d).

This lawsuit is now before the court on Kimber's and FFC's cross-motions for summary judgment on the sole issue of FFC's liability to Kimber. For reasons that follow, the court concludes that Kimber's motion should be granted in part and denied in part, and that FFC's motion should be denied in full.

## I.

In 1976, W.T. Grant Company filed for bankruptcy and sold its accounts receivable to defendant FFC, a corporation formed for the sole purpose of collecting on these accounts. About 8,000 of the accounts sold were personal charge accounts held by Alabama residents with W.T. Grant. Kimber alleges that the Alabama accounts, including hers, were already delinquent or in default when W.T. Grant assigned them to FFC. According to FFC's records, Kimber's account with W.T. Grant was "seriously delinquent" as of September 1975, with no payments received since May 3, 1975, and with a balance due of $150.70. Upon assignment of Kimber's debt, according to FFC, it notified her that the account had been transferred and the payment was overdue; other reminders that payment was due then followed, but by 1979 all such contact between FFC and Kimber ceased.

Five years later, in March 1984, FFC referred the account to an Alabama attorney for collection. The attorney did not contact Kimber, however, until early 1985, when someone in his office telephoned Kimber's grandmother and left a number for Kimber to call. When Kimber returned the call, she was told by a woman there that her bill must be paid or she would be sued. Kimber told the woman that she believed the account had been paid years ago. Kimber admits today that, because the debt is so old, she cannot now remember whether she in fact paid the debt, and she has no documents indicating one way or the other.

On January 24, 1985, FFC's attorney filed suit against Kimber in the Small Claims Court for Russell County, Alabama; the judge dismissed the suit. FFC then appealed the case to the Russell County Circuit Court for a trial *de novo*, where Kimber—this time represented by counsel—raised the statute of limitations defense. The action was dismissed with prejudice as untimely. FFC's attorney has filed about 200 similar suits.

Kimber, on behalf of herself and all other Alabama residents similarly situated, has now brought this federal lawsuit against FFC charging that its attempts to collect stale debts from them violated the Fair Debt Collection Practices Act. Kimber and FFC have, however, agreed that, before the court determines whether a plaintiff class should be certified pursuant to Fed.R.Civ.P. 23 and whether the class should recover, the court should first decide whether Kimber's individual claims have merit.

Apparently, identifying each member of the putative plaintiff class and determining whether the member's circumstances are sufficiently similar to Kimber's to warrant redress should Kimber prevail, could be a very expensive and time-consuming project; Kimber and FFC have therefore agreed that it would be much more efficient for the court to determine first whether Kimber herself is entitled to prevail. If the court should decide that Kimber is not entitled to prevail, the case would be over; but, if the court should decide that she should prevail, the court would then later determine, after appropriate additional discovery, what relief Kimber should receive; whether a plaintiff class should be certified; whether the class, if certified, should recover; and what relief, if any, the class should receive. The parties have also agreed that, if a plaintiff class is later certified, the class should not be in any manner prejudiced by the delay in certification.

In accordance with these agreements, Kimber and FFC have each filed a motion for summary judgment addressing only whether Kimber herself should prevail.

## II.

Congress passed the Fair Debt Collection Practices Act for the purpose of eliminating "the use of abusive, deceptive, and

unfair debt collection practices by many debt collectors." 15 U.S.C.A. § 1692(a). As previously stated, Kimber maintains that FFC has violated this Act. First, she claims that FFC has threatened to file, and has filed, legal proceedings against her to collect on a stale debt, in violation §§ 1692e and 1692f; and, second, she charges that the corporation has attempted to collect a debt from her without first giving her the notice required under the Act, in violation of § 1692g(a).

A lawsuit may be resolved on summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether summary judgment is appropriate, a court must liberally construe all evidence and the inferences to be drawn therefrom in favor of the party against whom the judgment is sought. As demonstrated below, the undisputed material facts reveal that Kimber is entitled to prevail as a matter of law on her 'stale debt' claims. However, neither Kimber nor FFC is entitled to

prevail on Kimber's 'notice' claim, because the claim presents disputed issues of fact.

### A.

The first matter the court must address in considering Kimber's claims is FFC's argument that it is not a "debt collector" subject to the Fair Debt Collection Practices Act; the parties agree that, as far as this case is concerned, the statute's coverage is limited to activities of debt collectors.

### i.

FFC contends that it does not fall within the Act's definition of debt collector, and, to support this contention, the corporation makes essentially two interrelated arguments. First, FFC observes that the Act offers a general definition of debt collector as any person whose "principal purpose ... is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6).[1] FFC's first argument is that

---

**1.** Throughout this part of its memorandum opinion, the court discusses various provisions in § 1692a. Section 1692a was amended in 1986 in ways irrelevant to these proceedings, but during the time at issue here the section provided in relevant part as follows:

As used in this subchapter—

* * * * * *

(3) The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

(4) The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer a debt in default solely for the purpose of facilitating collection of such debt for another.

(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion

provided by clause (G) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide

§ 1692a(6) limits a debt collector to one who collects or attempts to collect debts "owed or due *another*," and that, because FFC does not collect debts for another but for itself, it does not fall within the general definition.

FFC's second argument is a bit more complex, but nonetheless related to its first. The corporation correctly points out that, after offering a general definition of debt collector, § 1692a(6) expressly excludes several types of persons or transactions from the definition. The section provides that a debt collector does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." § 1692a(6)(A). Kimber and the corporation agree that it is apparent from the statute's legislative history that Congress intended the creditor exclusion to cover not only officers and employees of creditors but creditors themselves. *See* S.Rep. No. 95–382, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695. A creditor is defined by § 1692a(4) of the Act as

> any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

FFC's second argument is that it is an excluded creditor within § 1692a(4)'s definition because it is a person "to whom a debt is owed."

Kimber counters that FFC is not a creditor, because it falls within the 'assignee exception' to the definition of creditor— that is, it is a person who received "an assignment or transfer of a debt in default solely for the purpose of facilitating collec-

tion of such debt for another." Kimber argues that FFC falls within this exception because when the company received her debt, the debt was already in default. The corporation re-counters that it does not fall within the assignee exception because the exception applies only when the purpose of the debt assignment is to collect the debt "for another." FFC's two arguments therefore both whittle down to the contention that the Act's coverage is limited to instances where a person is collecting a debt "for another," which FFC says it is not doing.

Whether the Act's coverage is limited to instances where a person is collecting a debt for another may not be determined solely from the face of the statute; the statute is far from a model of drafting clarity. On the one hand it could be argued, as indeed Kimber does, that a "debt collector" is defined in § 1692a(6) with alternative phrasing, as a business that *either* has as its principal purpose debt collection *or* that regularly collects debts for another. Since it is undisputed that FFC's principal purpose is debt collection, Kimber asserts that the corporation clearly falls under the first prong of the definition, regardless of whether the collection is undertaken for the corporation itself or for another. But, on the other hand, this court is unaware of, and Kimber has not offered, any rationale for parsing the definition into two disjunctive parts; Kimber has not offered any logical explanation for why Congress would intend to cover "any debts" by a business whose "principal purpose" is debt collecting, but only "debts owed or due another" where the business "regularly" collects debts.

Similarly, the definition given for creditor in the Act does not on first blush offer

consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditor;

(F) any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client; and

(G) any person *collecting* or *attempting to* collect any debt owed or due or asserted to be owed or due another to the extent such activi-

ty (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

\*    \*    \*    \*    \*    \*

clear guidance on whether FFC falls within the assignee exception to the definition. The exception clearly appears to apply to a person to whom a debt in default has been assigned. Since an assignment is generally defined as the "transfer by a party of all of its rights to some kind of property, usually intangible," Black's Law Dictionary, 5th Ed., p. 109, any collection of a debt by the assignee would generally be for itself. And yet, the assignee exception refers to the assignee's collection as being for another.

FFC argues that the term assignment as used in the assignee exception means a "temporary assignment," where the assignor has the right to recall any and all debts assigned; the corporation contends that, where the assignment is temporary, the collection by the assignee is "for another," the assignor. Such assignment practices, according to FFC, are common-place in the collection industry. FFC then argues that, because the debt assignments between itself and W.T. Grant were permanent rather than temporary, its collections are for itself and not another; thus, it maintains, it does not fall within the assignee exception to the definition of creditor.

The court cannot accept FFC's 'temporary assignment' explanation for two reasons. First, the Act does not refer to 'temporary assignments' but to 'assignments' in general. Second, to say that the statute's coverage extends to only a specific form of contract, that is, a temporary assignment contract, would be to limit the law severely and to leave it open to easy evasion by simply adopting a different form of contract. FFC's temporary assignment explanation is not the answer to the ambiguity evident in the Act.

The court is convinced that the answer lies instead in a closer analysis of the Act itself, in particular the definition of creditor found in § 1692a(4). The first part of § 1692a(4) defines the universe of creditors as either those who originate a debt or those to whom a debt is owed; in either case, the creditors are not collecting the debts for others. The second part of § 1692a(4), the assignee exception, then purports to exclude from this universe those persons who collect assigned or transferred debts that are already in default when assigned or transferred. To say that this exception applies only to those who collect debts for others would be to render the exception superfluous and meaningless; those who collect debts for others are not in the original definitional universe, and there is therefore no need to exclude them. Rather, the excluding factors in the exception are that the debts are the result of an assignment or transfer and that the debts were already in default at the time of assignment or transfer. With the phrase "for another" at the end of the exception, Congress merely intended that the debts should have *originally* belonged to another and that the creditor was therefore in effect a third-party or independent creditor.

The phrase "owed or due another" has a similar meaning in the Act's definition of "debt collector" in § 1692a(6). As stated, the first part of § 1692a(4) defines the universe of creditors as those who collect debts for themselves. Section 1692a(6)(A) purports to exclude these creditors from the general definition of debt collector. There would be no need to exclude creditors—those who collect debts for themselves—from the general definition of debt collector unless that general definition included those who collect debts for themselves.

That this understanding of §§ 1692a(4) and 1692a(6) is correct is apparent when the legislative history of the Act is considered. This history reflects that the target and emphasis of the Act are "third-party" or "independent" collectors of "past-due" or "delinquent" debts. As the Senate Committee that considered the Act wrote,

The committee intends the term "debt collector," subject to the exclusions discussed below, to cover all third persons who regularly collect debts for others. *The primary persons intended to be covered are independent debt collectors.*

S. Report No. 95–382, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1697 (emphasis added).

The Committee explained that it limited the Act's coverage to third-party collectors of past due debts because,

> Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them.

*Id.,* at 1696.

With §§ 1692a(4) and 1692a(6)(A), Congress clearly sought to exclude creditors—that is, those who extend credit and collect their own debts—from the Act's coverage; such persons are, in the words of the Senate Report, "restrained by the desire to protect their good will." But, when these so-called creditors are in effect merely in the business of collecting stale debts rather than extending credit, they are no longer true creditors but debt collectors who, in the words of the Senate Report, "are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them"; they are simply independent collectors of past due debts and thus clearly fall within the group Congress intended the Act to cover.

This understanding of §§ 1692a(4) and 1692a(6) is also implicit in the opinion of another court. In *Perry v. Stewart Title Co.,* 756 F.2d 1197 (5th Cir.1985), a mortgagor sued the assignee of a mortgage and the original mortgagee, who continued to service the mortgage after assignment. The court held that the Act did not apply to either defendant due to their coverage by the creditor exclusion. As to the assignee, the court noted that the debt had not been in default on assignment: "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company or an assignee of a debt, *as long as the debt was not in default at the time it was assigned." Id.,* at 1208 (emphasis added).

█ For the above reasons, the court must therefore conclude that, even though FFC collects debts for itself, it is still a debt collector within the meaning of §§ 1692a(4) and 1692a(6) of the Act, because the corporation regularly collects debts and debt collection is its principal purpose, and because the debts the corporation collects were already in default when they were assigned to the corporation and thus the corporation falls within the assignee exception to the definition of creditor.

ii.

█ Next, FFC argues that it cannot be held liable under the Act for the misconduct alleged by Kimber, because all actions complained of were perpetrated by the corporation's attorney, rather than the corporation itself. The court disagrees.

The corporation rightly notes that the statute expressly exempts from its reach "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." 15 U.S.C.A. § 1692a(6)(F). This provision, however, merely creates an immunity for the attorney, not for the client on whose behalf the collection is undertaken. To interpret § 1692a(6)(F) otherwise would severely undermine the Act and frustrate the intent of Congress, for a debt collector could simply evade the Act by hiring an attorney to do what it could not do itself. This understanding of § 1692a(6)(F) is also consistent with Alabama's general rule that "omissions and commissions of an attorney at law are to be regarded as acts of the client whom he represents." *Lawrence v. Gayle,* 294 Ala. 91, 312 So.2d 385, 387 (1975); *see also Massey v. Educators Investment Corp. of Alabama, Inc.,* 420 So.2d 77 (Ala.1982).

B.

Having found that FFC is covered by the Fair Debt Collection Practices Act, the court now turns to Kimber's claims that the corporation violated the Act. In the Act, Congress set out several specific practices as impermissible, as well as generally proscribing harassing, oppressive or abusive conduct, 15 U.S.C.A. § 1692d, false, deceptive, or misleading representations, § 1692e, and unfair or unconscionable collection methods, § 1692f. To help ensure

the most complete protection possible, determinations as to whether conduct violates the Act are made in keeping with the standard of the "least sophisticated consumer." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172–75, 1179 (11th Cir.1985). Thus, in applying the law to this case, the court must decide whether FFC's actions were unfair or unconscionable, or whether the least sophisticated of consumers would have been deceived, misled, or harassed by such practices.

i.

Kimber claims that FFC's filing of the lawsuit against her violated § 1692f. That section states simply that, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Kimber argues that filing a lawsuit to collect on a debt that appears time-barred, without first determining after a reasonable inquiry that the limitations period is due to be tolled, constitutes an unfair and unconscionable practice offensive to § 1692f. The court agrees with Kimber.

"Statutes of limitations are not simply technicalities. On the contrary, they have been long respected as fundamental to a well-ordered judicial system." *Board of Regents v. Tomanio*, 446 U.S. 478, 487, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440 (1980). They reflect a strong public policy, as determined by legislative bodies and courts, that "it is *unjust* to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979) (emphasis added), *quoting Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). These statutes therefore "afford[ ] plaintiffs what the legislature deems a reasonable time to present their claims," while at the same time "protect[ing] defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *Kubrick*, 444 U.S. at 117, 100 S.Ct. at 357.

However, because these statutes are based on concepts of what is just and fair, "most courts and legislatures have recognized that there are factual circumstances which justify an exception to these strong policies of repose. For example, defendants may not, by tactics of evasion, prevent the plaintiff from litigating the merits of a claim, even though on its face the claim is time-barred." *Tomanio*, 446 U.S. at 487–88, 100 S.Ct. at 1797. These exceptions to the statutes are generally referred to as "tolling." *Id.*

■ The court agrees with Kimber that a debt collector's filing of a lawsuit on a debt that appears to be time-barred, without the debt collector having first determined after a reasonable inquiry that that limitations period has been or should be tolled, is an unfair and unconscionable means of collecting the debt. As previously demonstrated, time-barred lawsuits are, absent tolling, unjust and unfair as a matter of public policy, and this is no less true in the consumer context. As with any defendant sued on a stale claim, the passage of time not only dulls the consumer's memory of the circumstances and validity of the debt, but heightens the probability that she will no longer have personal records detailing the status of the debt. Indeed, the unfairness of such conduct is particularly clear in the consumer context where courts have imposed a heightened standard of care—that sufficient to protect the least sophisticated consumer. Because few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts, such consumers would unwittingly acquiesce to such lawsuits. And, even if the consumer realizes that she can use time as a defense, she will more than likely still give in rather than fight the lawsuit because she must still expend energy and resources and subject herself to the embarrassment of going into court to present the defense; this is particularly true in light of the costs of attorneys today.

FFC asserts, nevertheless, that because a statute of limitations is an affirmative defense which is waived if not raised, a plaintiff may not be penalized for knowingly filing a time-barred suit; indeed, according to FFC, its attorney was ethically authorized, if not bound, to pursue such a suit in light of the defensive posture of the limitations statute. Although the staleness issue has not been previously considered in relation to unfairness under the Fair Debt Collection Practices Act, the propriety of bringing a lawsuit to which there appears to exist a complete defense, without first making a reasonable inquiry as to whether the defense is in fact not complete, has been discredited elsewhere. Rule 11 of the Federal Rules of Civil Procedure demands that an attorney conduct a reasonable investigation into whether a claim is well grounded in law and fact, and not inspired by an improper purpose, before signing a pleading. Sanctions against attorney and client under the rule have been imposed where the attorney knew or should have known a claim was time-barred. *Steinle v. Warren*, 765 F.2d 95 (7th Cir.1985); *Van Berkel v. Fox Farm and Road Machinery*, 581 F.Supp. 1248 (D.Minn.1984). Further, the fact that a defense is affirmative has not relieved counsel of their Rule 11 responsibilities in other contexts. *See, e.g., Southern Leasing Partners, Ltd. v. Bludworth*, 109 F.R.D. 643 (S.D.Miss.1986) (suit barred by *res judicata* ); *Hasty v. Paccar, Inc.*, 583 F.Supp. 1577 (E.D.Mo.1984) (lack of personal jurisdiction.) In view of these holdings, FFC's argument that its attorney was ethically authorized to pursue the collections in case the debtors failed to raise the statute of limitations defense lacks authority.

The court must therefore conclude that FFC violated § 1692f when it filed suit against Kimber. There is no question that the debt FFC sought from Kimber was barred as stale. Two limitations periods were applicable. Where a stated account or simple contract is at issue, the Alabama Code of 1975, § 6-2-34(5) and (9) provides for a six year period; on an open account, a three year period applies, pursuant to § 6-2-37(1). Regardless of which statute is applied to Kimber's alleged debt, the limitations period has run, since her debt was assigned by W.T. Grant in 1976, or nine years before FFC sued her, and the debt was in default at the time of assignment. There is also no question that FFC's attorney did not, prior to filing the lawsuit, make a determination after a reasonable inquiry that the limitations period was due to be tolled. Under these circumstances, FFC's conduct was unjust and unfair, and in violation of public policy as well as the Fair Debt Collection Practices Act. Kimber is entitled to summary judgment on her claim that FFC violated § 1692f of the Act.

ii.

Kimber argues next that FFC made false, deceptive and misleading representations in violation of § 1692e of the Fair Debt Collection Practices Act by threatening to sue her on a claim the corporation knew was barred. Section 1692e provides that, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Among the tactics specifically prohibited are:

(2) The false representation of—

(A) the character, amount, or legal status of any debt; [and]

\* \* \* \* \* \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt. . . .

Kimber claims that when viewed through the eyes of the least sophisticated consumer, FFC's practices were false, deceptive, and misleading, in violation of the above provisions. She alleges that by threatening her with a lawsuit which the corporation knew or reasonably should have known was time-barred, the corporation falsely represented the legal status of her debt, misled her as to what action might be legally taken against her, and deceptively used this threat in attempting to collect on her alleged debt. In so doing, Kimber argues, FFC preyed upon the ignorance of an unsophisticated consumer. Threats to sue communicated through an attorney would only naturally represent to the least sophis-

ticated consumer that a lawsuit was viable, even when in fact it was not, Kimber contends.

FFC answers that since it was clearly possible to *file* a lawsuit against Kimber—whether or not it was possible to *win* one—there was no deception as to the legal status of the debt, nor any false threat of legal action used to coerce payment. FFC asserts that ordinary statutes of limitations bar only the remedy, not the underlying right.

Whether it is true that a statute of limitations defense does not erase the right underlying a lawsuit but rather prevents success on a claim is immaterial, for the court cannot agree with FFC that this legal principle, even if true, lends approval to the practice of threatening and undertaking lawsuits for which the statute of limitations has clearly run and for which there is no evidence that would warrant tolling. The dispositive fact is that a debt collector could not legally prevail in such lawsuit, and for the debt collector to represent otherwise is fraudulent.

By threatening to sue Kimber on her alleged debt, FFC violated § 1692e(2)(A) & (10); by threatening to sue her, FFC implicitedly represented that it could recover in a lawsuit, when in fact it cannot properly do so. To be sure, FFC did not expressly state to Kimber that her suit was not time-barred; nor did the corporation expressly tell Kimber that she had no legal defenses to its claim. But to be deceptive a representation need not be expressed and it need not be obvious to everyone; rather, as previously observed, the representation is deceptive and in violation of 1692e(2)(A) & (10), if it has the mere "tendency or capacity to deceive" the "least sophisticated consumer," *Jeter*, 760 F.2d at 1172. The vantage point from which FFC's threat should be viewed is not that of a lawyer or judge versed in law, but that of an unsophisticated consumer. As the Eleventh Circuit stated in *Jeter*,

> That law was not "made for the protection of experts, but for the public—that

vast multitude which includes the ignorant, the unthinking, and the credulous," *Florence Mfg. Co. v. J.D. Dowd & Co.*, 2 Cir., 178 F. 73, 75 [ (1910) ]; and the "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Federal Trade Commission v. Standard Education Soc.*, 302 U.S. 112, 116 [58 S.Ct. 113, 115, 82 L.Ed. 141 (1937]....

*Id.*, at 1172–73, *quoting Charles of the Ritz Distributors Corp. v. FTC*, 143 F.2d 676, 679 (2d Cir.1944).

Here, it is obvious to the court that by employing the tactics it did, FFC played upon and benefitted from the probability of creating a deception. Honest disclosure of the legal unenforceability of the collection action due to the time lapsed since the debt was incurred would have foiled FFC's efforts to collect on the debt. So instead, the corporation implicitly misrepresented to Kimber the status of the debt, and thereby misled her as to the viability of legal action to collect. As such, FFC's conduct was false and deceptive and in violation of provisions (2)(A) and (10) of § 1692e. Kimber is therefore entitled to summary judgment on her claim that FFC violated § 1692e by threatening to sue her.

### C.

█ Lastly, Kimber charges that FFC violated § 1692g(a) of the Fair Debt Collection Practices Act by failing to notify her of, among other things, her right to dispute the validity of the debt at issue and to obtain verification thereof. This section requires that within five days of a debt collector's initial contact with a debtor, the debt collector must send written notice to the debtor identifying the amount of the debt and the original creditor's name, and providing a statement of the debtor's rights to challenge and request verification of the debt.[2]

---

2. Section 1692g(a) provides:

Within five days after the initial communica-

The evidence is disputed as to whether FFC provided this notice to Kimber as required. Therefore, neither Kimber nor FFC is entitled to summary judgment on this claim.

### III.

In conclusion, Kimber is entitled to summary judgment as to liability on her claims that FFC threatened to sue her and sued her on a stale debt in violation of §§ 1692e and 1692f of the Fair Debt Collection Practices Act; but neither she nor FFC is entitled to summary judgment on her claim that FFC failed to give her the notice required by § 1692g(a) of the Act. An appropriate order will be entered.

tion with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.