**Christi HAVENS–TOBIAS, et al., Plaintiffs,**

v.

**Thomas G. EAGLE, et al., Defendants.**

No. C–1–99–596.

United States District Court, S.D. Ohio, Western Division.

Jan. 2, 2001.

Jason David Fregeau, Longmeadow, MA, for Christi Havens–Tobias, David Tobias, plaintiffs.

James A King, Porter Wright Morris & Arthur, Columbus, OH, Terrance A Nestor, Reminger & Reminger Co LPA, Cincinnati, OH, for Thomas G Eagle, defendant.

Terrance A Nestor, Reminger & Reminger Co. LPA, Cincinnati, OH, for M & M Associates Inc, Kathy Moore, defendants.

Tracy A Cassinelli, Terrance A Nestor, Reminger & Reminger Co LLP, Cincinnati, OH, for Schwan's Sales Enterprises Inc, defendant.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant Thomas G. Eagle's (hereinafter, "Defendant Eagle") Joint Motion to Dismiss the Amended Complaint (doc. 15); Plaintiffs' Response (doc. 20); Defendant Eagles's Reply (doc. 21); Defendant Schwan's Sales Enterprises, Inc.'s (hereinafter, "Defendant Schwan") Motion to Dismiss the Amended Complaint (doc. 16); Plaintiffs' Response (doc. 19); Defendant Schwan's Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim (doc. 23); Plaintiffs' Response (doc. 27); Defendant Schwan's · Reply (doc. 28); Plaintiffs' Motion for Default Judgment Against Defendant M & M Associates, Inc. (hereinafter, "Defendant M & M") and Defendant Kathy Moore (hereinafter, "Defendant Moore") (doc. 24); Plaintiffs' Motion for the Clerk to Enter Default Judgment as to Defendants M & M and Moore (doc. 25); and the Clerk's Entry of Default Judgment Against Defendants M & M and Moore (doc. 26). In addition, the Court held a Preliminary Pretrial Conference in this matter on August 3, 2000 (doc. 22).

## BACKGROUND

On August 5, 1999, Plaintiffs Christi Havens–Tobias and David Tobias (hereinafter, "Plaintiffs") filed suit against Defendants Eagle, M & M, Moore, and Schwan (hereinafter, collectively referred to as "Defendants") for allegedly violating the Fair Debt Collection Practices Act (hereinafter, the "FDCPA"), Title 15 U.S.C. §§ 1692, et seq., and the Ohio Consumer Sales Practices Act (hereinafter, the "OCSPA"),[1] Ohio Rev.Code §§ 1345, et seq. (doc. 1).

Specifically, Plaintiff Christi Havens–Tobias (hereinafter, "Plaintiff Havens–Tobias") contends that Defendant Eagle, an attorney licensed to practice law in Ohio, violated the FDCPA and the OCSPA in his attempts to collect on an alleged debt that was owed to Defendant M & M (Id.).[2]

---

1. The OCSPA provides, in relevant part:
   No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
   Ohio Rev.Code § 1345.02(A) (West 2000).

2. Ohio Rev.Code Ann. § 1345.02(B) lists a series of "deceptive" acts, the violation of which provides an aggrieved "consumer" a right to statutory damages. The state empow-

ers the Ohio Attorney General to adopt rules and regulations defining deceptive, unfair, or unconscionable conduct. Ohio Rev.Code Ann. § 1345.05. Under the OCSPA, a consumer has a right to statutory damages, where actual damages cannot be proved or are found to be inadequate, if the conduct complained of was previously declared deceptive or unconscionable by an Ohio court. Ohio Rev.Code Ann. § 1345.09(B). Finally, Defendants do not dispute the fact that Plaintiffs are "consumers" as defined under the federal

Plaintiffs also assert that Defendant Schwan is liable for the alleged violations of the FDCPA and the OCSPA committed by the other named Defendants under a theory of *respondeat superior* (*Id.*).

In addition to the allegations of illegal debt collection under the FDCPA and the OCSPA, Plaintiffs asserted a total of six state law causes of action against all Defendants and moved this Court for compensatory, punitive, and any other monetary relief that may be recoverable under the statutes (*Id.*).[3] Defendants did not file an Answer to Plaintiffs' original Complaint.

Instead, Defendant Eagle filed a Motion to Dismiss on November 1, 1999 alleging that, even if the factual allegations contained in Plaintiffs' Complaint are deemed admitted, the Complaint, nonetheless, fails to state a cause of action upon which relief can be granted (doc. 6). On May 18, 2000, this Court entered an Order dismissing Count I (i.e., the FDCPA) of Plaintiffs' original Complaint with prejudice in regards to Defendant Eagle due to Plaintiffs' failure to state a claim upon which relief could be granted, and, we further declined to exercise supplemental jurisdiction over Counts II–VIII (i.e., the OCSPA claim, etc.) of the original Complaint (doc. 12).

Thereafter, Plaintiffs filed an Amended Complaint on June 26, 2000, on the premise that since none of the Defendants had filed an Answer to their original Complaint, Plaintiffs had a right to file an Amended Complaint in order to address some of the concerns about the sufficiency of their original facts and claims that the Court noted in our May 18, 2000 Order (*see* doc. 14). In Response, Defendant Eagle filed a Motion to Dismiss the Amended Complaint on July 7, 2000, alleging that the Amended Complaint contains no new

factual allegations that overcome the earlier decision by this Court and Defendants argue that the original Complaint, as well as the Amended Complaint fails to state a claim upon which relief could be granted (doc. 15). Shortly thereafter, Defendant Schwan filed its Motion to Dismiss the Amended Complaint for the same or similar reasons as Defendant Eagle (doc. 16).

Plaintiffs allege in their Amended Complaint that, the "acts and omissions of Defendants constitute violations of the FDCPA" and the OCSPA (doc. 14). Specifically, Plaintiffs assert that, Defendant Eagle's actions were "frequent, persistent, and intentional violations of the FDCPA" due to his participating in illegal collection activities on behalf of Defendants M & M and Moore (*Id.*). Plaintiffs also assert that Defendant Schwan "knew of, ratified, and approved of the illegal collection activities of Defendants M & M, Moore, and Eagle," and, therefore, making Defendant Schwan vicariously liable for those illegal activities (*Id.*).

In contrast, Defendant Eagle contends that, although a total of four letters were exchanged between opposing counsel in regards to the disputed debt, "Defendant Eagle never directly communicated, contacted or harassed" either Plaintiff during the course of attempting to collect the debt (doc. 6). The Court takes note of the fact that, as of the date of this Order, none of the Defendants have filed an Answer to the Amended Complaint (doc. 14).

The following facts are deemed as undisputed and will be viewed by this Court in a light most favorable to Plaintiffs for the express purpose of deciding these pending Motions for Summary Judgment, except where otherwise indicated, and are taken

---

and state debt collection statutes (*see* docs. 6, 8 & 9).

**3.** The original Complaint lists the following causes of actions against all Defendants as the following: (1) violations of the FDCPA; (2) violations of the OCSPA; (3) abuse of process;

(4) malicious prosecution; (5) invasion of privacy; (6) defamation; (7) fraud; and (8) punitive damages (doc 1). However, in their Response, Plaintiffs assert that, they "do not oppose Defendant Eagle's Motion to Dismiss the malicious prosecution claim" (doc. 7).

primarily from the Amended Complaint (*see* doc. 14).

Defendant Schwan, an Ohio corporation, is in the business of delivering to homes pre-prepared meals in which the consumers normally pay the company's drivers for the goods that are delivered. On May 15 and 28, 1998,[4] Defendant Schwan made deliveries to Plaintiff Havens–Tobias' home and she allegedly paid for those deliveries with two checks that were later returned by the bank to Defendant Schwan due to insufficient funds. The alleged returned checks totaled $103.32.

On June 26, 1998, Defendant Schwan left a notice in Plaintiff Havens–Tobias' mailbox concerning the May 28th check, but allegedly never notified her of the May 15th check until much later. In response to Defendant Schwan's notice, Plaintiff Havens–Tobias asserts that, she tried on several occasions to cover the returned May 28th check and the additional check fee with a money order, but Defendant Schwan allegedly refused to accept the money order due to the fact that the money order was allegedly considered only a "partial payment" of the total debt owed.

Thereafter, Defendant Schwan hired Defendant M & M, an Ohio corporation in the business of debt collection, to collect the total amount owed to Defendant Schwan, plus any additional fees, liquidated damages, and any other charges associated with the collection of the returned checks. The person at M & M Associates, Inc.'s who allegedly was responsible for collecting the unpaid amounts from Plaintiff Havens–Tobias was Defendant Kathy Moore, M & M's principal owner and operator.

When Plaintiff Havens–Tobias refused to pay Defendants M & M and Moore the

disputed debt, the matter was referred to an attorney, Defendant Eagle, to collect the debt and to file suit against Plaintiff Havens–Tobias, if needed. Plaintiffs further allege in their Amended Complaint that, "Defendant Eagle regularly collects or attempts to collect, directly or indirectly, consumer debts' due and owing, or allegedly due and owing to others," for Defendant Moore on a "regular" basis.

After three months had passed with the Parties exchanging demands and counter-demands in an attempt to satisfy the disputed debt, on October 9, 1998, Defendant Eagle filed suit in the Miamisburg, Ohio Municipal Court, on behalf of Defendant M & M, against Plaintiff Havens–Tobias.[5] Defendant Eagle asserted in the municipal court complaint that, Plaintiff Havens–Tobias owed a total of $493.32 as a result of the two returned checks.

In an attempt to avoid legal action, Plaintiff Havens–Tobias asserts that her counsel at that time, Gary Leppal, attempted on several occasions to inform Defendant Eagle of the alleged "illegality" of the actions of Defendants Schwan, M & M, and Moore in regards to their method, manner, and the amount of the debt they were seeking to recover. Nonetheless, Defendant Eagle, on behalf of Defendant M & M, continued with the litigation of the debt in state court until Defendant M & M offered to settle the state court action.

On June 11, 1999, the Parties agreed to settle the state court action and the suit was dismissed with prejudice in exchange for a total payment of $133.32—the original amount that Plaintiff Havens–Tobias allegedly attempted to pay Defendants Schwan, M & M, and Moore. However, Plaintiff Havens–Tobias refused to sign

---

4. Plaintiffs admit in their Amended Complaint that the May 15th check was for $41.64, and the May 28th check was for $61.68.

5. The municipal court complaint states, in pertinent part:

Pursuant to provisions of O.R.C. Section 2307.61, *et seq.*, the [d]efendant [Christi Havens–Tobias] is obligated to the [p]laintiff's

assignor [M & M Associates] in the amount of the original checks that were issued, plus liquidated damages as stated, plus administrative costs, including court costs and reasonable attorney fees, for collection of the original check amounts.

(doc. 1).

Defendants' proposed "release of all claims" form. Shortly thereafter, Plaintiffs filed this action against Defendants alleging violations of the FDCPA and the OCSPA, as well as several state law claims.

In July 2000, Defendants Eagle and Schwan filed Motions to Dismiss Plaintiffs' Amended Complaint asserting that Plaintiffs' Amended Complaint should be dismissed because Plaintiffs' did not request leave of this Court to amend their original Complaint in accordance with Rule 15 of the Federal Rules of Civil Procedure (docs. 15 & 16). Furthermore, Defendant Schwan alleges that Plaintiffs have not properly commenced service of this action upon Defendant Schwan in accordance with Rule 4 of the Federal Rules of Civil Procedure (doc. 16).

Thereafter, Plaintiffs filed their Responses (doc. 19 & 20), followed by Defendant Eagle's sole Reply (doc. 21). In their Response, Plaintiffs assert that on August 16, 1999, Defendant waived service of process in accordance with Rule 4 of the Federal Rules of Civil Procedure (doc. 19).

In his Motion to Dismiss, Defendant Eagle asserts that the Amended Complaint merely restates the factual allegation contained in Plaintiffs' original Complaint and does not overcome the previous deficiencies noted by this Court (doc. 21). Defendant Eagle asserted primarily two defenses to the Complaint that are applicable to the Amended Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (doc. 21). Defendant Eagle asserts that: (1) Plaintiffs' FDCPA claim fails to state a claim because Defendant Eagle is not a "debt collector," as defined in the federal statute; and (2) even if Defendant Eagle is a "debt collector," Plaintiffs' Amended Complaint fails to allege sufficient facts that would show any violation of the FDCPA on the part of Defendant Eagle (*Id.*).

On August 15, 2000, the Court granted leave for Plaintiffs' to file an Amended Complaint and Defendant Schwan to file a Motion to Dismiss Plaintiffs' Amended Complaint due to Plaintiffs' Failure to State a Claim (doc. 22). On August 16, 2000, Defendant Schwan filed a Motion to Dismiss on the grounds that Plaintiffs failed to state a claim upon which relief can be granted because Defendant Schwan is not a "debt collector," and the law does not provide a basis for vicarious liability under FDCPA (doc. 23).

Thereafter, Plaintiffs filed a Motion for Default Judgment Against Defendants M & M and Moore (doc. 24), and followed with an additional Motion for the Clerk to Enter the Default Judgment as to Defendants M & M and Moore (doc. 25). In their Motion for a Default Judgment, Plaintiffs assert that Defendants M & M and Moore were personally served with a properly executed summons and a copy of the original Complaint on October 5, 1999, however, no formal response has ever been received by those Defendants in this action (doc. 25). On September 1, 2000, the Clerk of this Court made an entry of default judgment against Defendants M & M and Moore (doc. 26). The Clerk's Entry of Default against Defendants M & M and Moore states, "[t]here being no pleadings filed by [Defendants] in response to the amended complaint, it appears that the above-named [Defendants are] in default for failure to plead, file a claim, or otherwise defend as required by law" (doc. 26).

Having reviewed this matter, the Court hereby AFFIRMS the Clerk's ENTRY of a DEFAULT JUDGMENT in this action against Defendants M & M and Moore (*see* doc. 26). *See* Fed.R.Civ.P. 55(a). Accordingly, this matter is SET for a hearing on damages and attorney fees on Thursday, February 1, 2001, at 11:00 A.M. Plaintiffs are to submit their memorandum in support of damages by no later than Tuesday, January 16, 2001, Defendants M & M's and Moore's memoranda in opposition are due no later than Tuesday, January 23, 2001, and, finally, Plaintiffs reply, if need-

ed, is due no later than seven days thereafter.

The analysis which follows will focus solely upon Plaintiffs' FDCPA claim, Count I of the Complaint, as well as Defendants Eagle's and Schwan's responses to that claim. In addition, for the purpose of deciding this Motion in a light most favorable to Plaintiffs, the Court will assume without deciding that service of process in this action was perfected or waived by Defendant (*see* docs. 16 & 19), and we will also assume without deciding that Defendant Eagle is a "debt collector" within the meaning of the FDCPA and the OCSPA.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss requires a court to determine whether a cognizable claim has been pleaded in the complaint. The basic federal pleading requirement is contained in Fed.R.Civ.P. 8(a)(2), which states that a pleading "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). Rule 8(a)(2) of the Federal Rules of Civil Procedure operates to provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief. *Id.* at 158 (citing *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99). The Sixth Circuit, in the case of *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993), explained that when a court is evaluating a motion to dismiss, the court:

must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.

*Id.*, 991 F.2d at 1240; *see also Walker v. Michael W. Colton Trust*, 33 F.Supp.2d 585, 589 (E.D.Mich.1999). The Sixth Circuit further held that the complaint "need only give 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir.1990)).

In addition, the Sixth Circuit stated the proper threshold for a Rule 12(b)(6) dismissal:

[W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988) (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n. 3 (1st Cir.1976)).

## DISCUSSION

In Count I of their Amended Complaint, Plaintiffs allege that Defendant Eagle violated the Fair Debt Collection Practices Act, Title 15 U.S.C. §§ 1692, *et seq.* Plaintiffs' further allege that Defendant Schwan is vicariously liable for the alleged violations of the FDCPA committed by the other Defendants.

The legislative purpose behind the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,

and to promote consistent State action to protect consumers against debt collection abuses." Title 15 U.S.C. § 1692(e) (2000). The FDCPA is applicable in regards to the conduct of "debt collectors," and defines such persons as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

■ Construing these provisions, the United States Supreme Court and the Sixth Circuit Court of Appeals have held that attorneys can qualify as "debt collectors" under the FDCPA. *See Heintz v. Jenkins,* 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 106 (6th Cir.1996). In *Heintz,* the Supreme Court stated that, the FDCPA requirements apply to "attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz,* 514 U.S. at 299, 115 S.Ct. 1489; *see also Credit Acceptance Corp.,* 76 F.3d at 106. Thus, one "may regularly render debt collection services, even if these services are not a principal purpose of his business." *Garrett v. Derbes,* 110 F.3d 317, 318 (5th Cir.1997). As another court explained, "the word 'regular' is not synonymous with the word 'substantial.' Debt collection services may be rendered 'regularly' even though these services may amount to a small fraction of the firm's total activity." *Schroyer v. Frankel,* 197 F.3d 1170, 1174 (6th Cir.1999) (quoting *Stojanovski v. Strobl & Manoogian, P.C.,* 783 F.Supp. 319, 322 (E.D.Mich.1992)). In other words, under this interpretation of "regular" or "regularly," an attorney may be a "debt collector" under the FDCPA even when the ratio of his debt collection efforts to other legal efforts is relatively small. *Schroyer,* 197 F.3d at 1174.

The FDCPA, prohibits any "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statute further provides illustrative examples of harassing, oppressive, or abusive conduct:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person;

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader;

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title;

(4) The advertisement for sale of any debt to coerce payment of the debt;

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number; and

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(1)–(6), *see also Walker v. Michael W. Colton Trust,* 33 F.Supp.2d 585, 593–594 (E.D.Mich.1999).

There are three issues before this Court. The first issue to be decided, assuming the facts as alleged in Plaintiffs' Complaint are deemed admitted, is whether Defendant Eagle is a "debt collector" under the FDCPA, and, thus, subject to the statutory provisions of the FDCPA. If this Court finds that Defendant Eagle is not a "debt collector" as defined in the FDCPA, then we may lack subject matter jurisdiction of this action. *See* Fed.R.Civ.P. 12(b)(1). The second issue, assuming the facts in Plaintiffs' Amended Complaint are deemed admitted, is whether Plaintiffs' Amended Complaint states a claim upon which relief can be granted. ·*See* Fed.R.Civ.P. 12(b)(6).

The third issue, assuming the facts in Plaintiffs' Amended Complaint are deemed admitted, is whether Defendant Schwan can legally be held vicariously liable for the alleged violations of the FDCPA committed by Defendants Eagle, M & M, and Moore.

Having reviewed this matter, the Court finds that Plaintiffs' Amended Complaint fails to state a claim against Defendant Eagle upon which relief can be granted for several reasons.

First, Plaintiffs' Amended Complaint primarily adds legal conclusions regarding Defendant Eagle's alleged classification as a "debt collector," but fails to put forward any further factual violations of the FDCPA then what was first alleged in their original Complaint, and, subsequently, dismissed in this Court's May 18, 2000 Order (see docs. 1 & 12).

In this Court's May 18, 2000 Order in which we granted Defendant Eagle's Motion to Dismiss, the Court found that it was unnecessary to determine whether Defendant Eagle was a "debt collector," because Plaintiffs' original Complaint had failed to state a claim upon which relief could be granted, and, therefore, we found no violation of the FDCPA. In the case at bar, the Court finds nothing in the Amended Complaint that alters the lack of factual sufficiency from the original Complaint. Again, even if we accepted Plaintiffs' argument that Defendant Eagle was a "debt collector" and was subject to the provisions of the FDCPA, this Court also finds that Defendant Eagle's Motion to Dismiss should, nonetheless, be granted.

Specifically, we find that Plaintiffs' FDCPA claim against Defendant Eagle fails to state a claim because Plaintiffs have alleged insufficient facts in order to show any violation of the statute by Defendant Eagle. See In re Sofamor Danek Group, Inc., 123 F.3d 394, 400 (6th Cir. 1997) (finding that a court need not accept legal conclusions or unwarranted factual inferences as true). For example, Plain-tiffs do not specifically allege any false or misleading representations by Defendant Eagle, such as "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Similarly, Plaintiffs' Amended Complaint does not allege any unfair practices by Defendant Eagle, such as "[t]he collection of any amount (including any interest, fee, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

In addition, Plaintiffs have not alleged any facts that would tend to show that Defendant Eagle violated the FDCPA by engaging in such actions that would reasonably be considered as improper communications, harassment, abuse, misleading representation, or threats of illegal action. 15 U.S.C. §§ 1692c–e. Indeed, the undisputed facts reveal that, Defendant Eagle was merely representing his client in attempting to collect on a disputed debt. Furthermore, Plaintiffs' Amended Complaint fails to allege sufficient facts indicating that Defendant Eagles's representation of Defendant M & M was anything less than reasonable. See Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 405–406 (6th Cir.1998) (finding that in reviewing the sufficiency of a complaint under Rule 12(b)(6), a district court is not required to fill in omitted factual allegations or accept as true conclusory allegations or unwarranted legal conclusions).

More fundamentally, nothing Defendant Eagle said or did with respect to Defendant M & M was objectively false. Hence, Plaintiffs' contention that Defendant Eagle misrepresented Defendant M & M's authority to sue on behalf of Defendant Schwan is not supportable. See Lewis, 135 F.3d at 405–406 (describing conduct that violates the FDCPA, such as: "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's per-

sonal affairs to friends, neighbors or employers, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process") (citing Sen.Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), reprinted in 1977 U.S.C.A.A.N. 1695, 1696).

Plaintiffs contend in the introductory paragraphs of their Amended Complaint that their newly revised allegations "fill the gaps" identified by the Court in its Order dismissing this action against Defendant Eagle. That is not true. The revised allegations essentially repeat the same allegations of the original Complaint. Once again, the only premise that the revised allegations establish is that Defendant Eagle was lawfully representing a client in a dispute with Plaintiffs. Despite Plaintiffs' conclusory assertions to the contrary, nothing in Plaintiffs' Amended Complaint indicates that Defendant Eagle engaged in the kind of harassing, oppressive, or abusive conduct proscribed by the FDCPA.

Indeed, throughout their Amended Complaint, Plaintiffs ignore entirely the provisions of Ohio Rev.Code Ann. § 2307.61.[6] This statute allows recovery of liquidated damages and other costs against someone who passes bad checks. While Plaintiffs allege that they attempted to tender the amount of the bad checks first to a Schwan driver and then to M & M, they never offered anything for the amounts obtainable under the Ohio statute. Thus, when M & M refused to simply accept the face value of the checks (plus a small bounced check fee), it was fully within its rights under Ohio Rev.Code Ann § 2307.61 to pursue what M & M believed was due them under the statute.

In addition, when Defendant Eagle agreed to represent M & M and file suit against Plaintiffs in order to collect the amount of the bounced checks, plus the amounts of recovery permitted by § 2307.61, he was acting lawfully. More importantly, nothing with respect to Defendant Eagle's actions in attempting to collect the amounts permitted by the Ohio statute constitutes a violation of the FDCPA. Moreover, Plaintiffs have alleged insufficient facts in order to claim that Defendant Eagle's conduct was oppressive and outrageous in connection with the collection of a debt. *See* Title 15 U.S.C. § 1692d. Defendant Eagle was lawfully attempting to collect on a disputed debt for a client. Defendant Eagle's actions were nothing short of reasonable under the circumstances, and are not considered by this Court to be deceptive, unconscionable, or unfair.

In summary, "in appraising the sufficiency of a complaint, a court follows the accepted rule that a complaint should be dismissed for the failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim" which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. After reviewing Plaintiffs' Amended Complaint and their Response, the Court is unable to determine exactly what actions taken by Defendant Eagle, on behalf of his client Defendants M & M and Moore, that were allegedly in violation of the FDCPA.

█ Finally, Plaintiffs allege in their Complaint that Defendant Schwan's usual course of business is to have consumers purchase goods delivered by its drivers. Plaintiffs do not even allege that Defendant Schwan is a debt collector as required by the FDCPA. Their only allegations are that Defendant Schwan is somehow vicariously liable for the acts and/or omissions of the other Defendants to this action.

However, the law does not provide a basis for such a claim. Instead, the law

---

**6.** Ohio Rev.Code § 2307.61 provides for civil recovery by a party injured from a criminal act. It allows for such recovery from "any person who willfully damages the owner's property or commits a theft offense, as defined in § 2913.01 of the Revised Code." One of the offenses listed as a "theft offense" under § 2913.01 is the violation of "passing bad checks" under Ohio Rev.Code § 2913.11.

holds that "[l]iability under the FDCPA is possible only if one is a 'debt collector' within the meaning of the Act." *West v. Costen,* 558 F.Supp. 564, 573 (W.D.Va. 1983); *see also Wadlington,* 76 F.3d at 106 (finding that one who is not a debt collector, as defined by the FDCPA, cannot be held liable under the FDCPA).

Plaintiffs state that the case of *Ditty v. CheckRite, Ltd.,* 973 F.Supp. 1320 (D.Utah 1997) stands for the proposition that a creditor can be held liable for the illegal conduct of a debt collector (doc. 27). In *Ditty,* the court found that Checkrite, who was the debt collector *and not the creditor,* could be held vicariously liable for the conduct of its attorney. *Id.,* 973 F.Supp. at 1333 (emphasis added). In *Newman v. Checkrite California, Inc.,* 912 F.Supp. 1354, 1370 (E.D.Cal.1995), the court held that a *"debt collector* may be found vicariously liable for the conduct of its attorney." *Id.,* 912 F.Supp. at 1370 (emphasis added). In *Martinez v. Albuquerque Collection Servs.,* 867 F.Supp. 1495, 1502 (D.N.M.1994), the court stated that *"[d]ebt collectors* employing attorneys or other agents to carry out debt collection practices that violate the FDCPA are vicariously liable for their agent's conduct." *Id.,* 867 F.Supp. at 1502 (emphasis added). In *Kimber v. Federal Financial Corp.,* 668 F.Supp. 1480, 1486 (M.D.Ala.1987), the court held that there was vicarious liability for a *debt collector,* not creditors. *Id.,* F.Supp. at 1486 (emphasis added).

Simply put, none of the cases cited by Plaintiffs stand for the proposition that a creditor can be held liable for the collection action of the debt collector. Defendant Schwan is not a debt collector as defined by the FDCPA, and Defendant Schwan did not participate in any activity that would cause it to fall within the definition of a debt collector as defined by the Act.

Having reviewed this matter, the Court finds that Defendant Schwan does not fall into the category of "debt collector," as provided by 15 U.S.C. § 1692a(6), but rather is the creditor of Plaintiffs, and, therefore, cannot be held liable, vicariously or otherwise, under the FDCPA.

Furthermore, jurisdiction in the instant case is based upon a federal question, pursuant to Title 28 U.S.C. § 1331, and, thus, this Court in its discretion, may decline to hear Plaintiffs' remaining state law claims. *See* 28 U.S.C. § 1367(c); *see also United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Taylor v. First America Bank–Wayne,* 973 F.2d 1284, 1287 (6th Cir.1992) ( "[I]f the federal claims are dismissed before trial ... the state claims should be dismissed as well."). In exercising our discretion, this Court must look to "considerations of judicial economy, convenience and fairness to the litigants" and to avoid *needless decisions of state law. Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130.

As previously discussed, Plaintiffs' Amended Complaint contains seven state law claims asserted against Defendant Eagle (doc. 1). Because Counts II–VIII allege state law claims, the Court will DISMISS these claims WITHOUT PREJUDICE.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS–IN–PART Defendant Eagle's Motion to Dismiss (doc. 15) and Defendant Schwan's Motion to Dismiss (do.23), as well as AFFIRMS the Clerk's Entry of a Default Judgment against Defendants M & M Associates, Inc. and Kathy Moore (doc. 26). Therefore, Count I of Plaintiffs' Amended Complaint is hereby DISMISSED WITH PREJUDICE in regards to Defendants Eagle and Schwan (*see* doc. 14). Furthermore, the Court DIRECTS the Clerk of this Court to enter Judgment in favor of Defendants Thomas G. Eagle and Schwan Sales, Enterprises, Inc. in this matter

In addition, the Court DECLINES to exercise supplemental jurisdiction over Counts II–VIII of the Complaint, and,

thus, those claims are DISMISSED WITHOUT PREJUDICE in regards to Defendants Eagle and Schwan (*Id.*). Accordingly, this matter is SET for a hearing on damages and attorney fees on Thursday, February 1, 2001, at 11:00 A.M. Plaintiffs are to submit their memorandum in support of damages by no later than Tuesday, January 16, 2001, Defendants M & M's and Moore's memoranda in opposition are due no later than Tuesday, January 23, 2001, and, finally, Plaintiffs reply, if needed, is due no later than seven days thereafter.

SO ORDERED.